ISAAC KUHN

*v.*

SAMUEL EPPSTEIN *et al.*

*Opinion filed December 20, 1905.*

1. SPECIFIC PERFORMANCE—*when contract does not lack mutuality.* A contract to sell land does not lack mutuality because the vendor does not hold the legal title at the time the contract was made, where the vendor is the real owner but the naked legal title is being held by a third person as agent of the vendor and subject wholly to the latter's orders. (*Gage* v. *Cummings,* 209 Ill. 120, distinguished.)

2. SAME—*lease for term of years is an encumbrance.* A lease for a term of years constitutes an encumbrance, within the meaning of a contract to convey property free from any and all encumbrances.

3. SAME—*right of vendee to enforce part performance.* If the vendor is unable to convey the complete title contracted for, the vendee may, generally, elect to have the contract specifically performed so far as the vendor can perform it, and to have a deduction made from the contract price for the difference in value between the title contracted for and that conveyed.

APPEAL from the Circuit Court of Champaign county; the Hon. SOLON PHILBRICK, Judge, presiding.

Appellant, Isaac Kuhn, filed his bill in the circuit court of Champaign county against the appellees, Samuel Eppstein, William D. Eppstein, the Trevett & Mattis Banking Company and John McDonell, for the specific performance of a contract. The bill alleges that on June 7, 1904, Samuel Eppstein executed a certain contract in words and figures following:

"CHAMPAIGN, ILLINOIS, *June 7, 1904.*

"I hereby acknowledge receipt of $500 as part payment on my building 41 Main street, which I sell and convey to Isaac Kuhn for $7500, and I hereby agree to deliver to Isaac Kuhn, Champaign, Illinois, on or before July first, a clear title and deed free of any and all encumbrances whatsoever, taxes paid by me to date of delivery of abstract, on payment of balance by said Isaac Kuhn of $7000.

SAMUEL EPPSTEIN."

The bill further alleges that upon the execution of said contract complainant paid the sum of $500 to Samuel Eppstein, and was notified that he would place the deed for said premises in escrow in the hands of the Trevett & Mattis Banking Company, to be delivered upon payment of the purchase price; that William D. Eppstein held the naked legal title to the premises, but the equitable title was in Samuel Eppstein, and William Eppstein held the same in trust for Samuel Eppstein and had no other or further interest therein; that upon the payment of the $500 William Eppstein executed a warranty deed for said premises to complainant and placed the same in escrow in the hands of the Trevett & Mattis Banking Company, to be delivered to complainant upon completion of the contract; that William D. Eppstein delivered to complainant an abstract of title and caused certain insurance policies to be delivered to complainant, and the complainant proceeded to expend the sum of $900 in obtaining details, plans, surveys and drawings for remodeling said premises, together with another building adjoining the same and belonging to complainant; that on July 1, 1904, complainant tendered to the Trevett & Mattis Banking Company $7000 and demanded the deed, and was informed by said banking company that it could only deliver said deed subject to a lease to one John B. McDonell, who claimed to hold the same for a period of three years from June 1, 1904; that thereupon complainant tendered the sum of $7000 and demanded conveyance free from all encumbrances, which was refused by Samuel Eppstein. The bill further alleges that complainant has incurred certain liabilities in leasing said premises for business purposes, which liabilities cannot be carried out with the lease upon the premises. The prayer of the bill is that Samuel Eppstein, and John B. McDonell, the lessee, be required to interplead and settle and adjust the controversy between them; that the Trevett & Mattis Banking Company be required to bring the deed of conveyance into court, and that the amount

which should be deducted from the purchase price of said premises may be ascertained, and that this amount may be deducted from the purchase price and the deed delivered to the complainant.

Before the hearing the building upon the premises, of the value of $5000, was destroyed by fire, and insurance to the amount of $3500 was collected by Samuel Eppstein. A supplemental bill was filed by complainant setting up these facts, and praying that the depreciation in value of said premises be deducted from the contract price and the remainder of said premises conveyed to complainant.

William D. Eppstein and Samuel Eppstein demurred to the bill, and their demurrer was sustained by the court and the bill dismissed for want of equity. From this decree an appeal has been prosecuted to this court.

RAY, DOBBINS & RILEY, for appellant.

WILLIAM E. O'NEILL, and A. D. MULLIKEN, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question raised upon the appeal is as to the ruling of the circuit court in sustaining the demurrer and dismissing the bill. The ground upon which the demurrer was sustained does not appear from the record, but from the briefs and arguments of counsel it is apparent that it was sustained upon the authority of *Gage* v. *Cummings,* 209 Ill. 120, and for the reason that the contract was lacking in mutuality, because William D. Eppstein was not a party to it.

In the *Gage case* the contract was between Henry H. Gage and Norman P. Cummings, while a part of the legal title was in Mary B. Gage. We there held that the contract was not mutual, for the reason that Cummings could not have specifically enforced it against the owners of the real estate which Gage agreed to convey, because Gage did not

have the legal title to all of it, and therefore the contract was not mutual and Gage could not enforce it against Cummings. We also held in that case that the mere fact that Mary B. Gage, within the time limited by the contract for the conveyance, executed her deed and placed it in the hands of the trustee, to be delivered to Cummings whenever he complied with the contract, did not constitute an acceptance of the contract by her, for the reason that it was not made subject to her acceptance or approval. The case at bar presents a very material and different state of facts. There can be no doubt that a contract, to be specifically enforced by the courts, must be mutual, so that it may be enforced by either of the parties against the other, and whenever, from personal incapacity or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. Fry on Specific Performance, sec. 286; Waterman on Specific Performance, sec. 196; 2 Beach on Modern Law of Contracts, sec. 885; *Mix* v. *Beach,* 46 Ill. 311; *Tryce* v. *Dittus,* 199 id. 189; *Gage* v. *Cummings, supra.*

Upon this demurrer the allegation of the bill must be taken as true. The allegation is, that William Eppstein, at the time of the execution of the contract, held the naked legal title to the premises but that the equitable title was in Samuel Eppstein, and William Eppstein held the naked legal title in trust for Samuel Eppstein and had no other or further interest in the premises, and that the $500 part payment was delivered to defendants and accepted by them, and William Eppstein executed a warranty deed conveying the premises to appellant and placed the same in the hands of the bank to be delivered to appellant, and the deed thus delivered was held by the bank subject to the order and direction of Samuel Eppstein. Accepting these facts as true, William Eppstein was merely the agent of Samuel Eppstein and held the title subject to his order. If William Eppstein had refused to obey the orders of Samuel Eppstein with reference to the

property, or had refused to re-convey to him or to any other person designated by him, a court of equity, as between the two, would have had complete jurisdiction to enforce the rights of Samuel Eppstein. (*Coffin* v. *Argo,* 134 Ill. 276; *DeWalsh* v. *Braman,* 160 id. 415.) The contract was signed by the real equitable owner of the premises. It cannot be disputed that he had full power and authority to make the contract of sale, or to make any other disposition of his own property as he might see fit, without any interference from his son, William. If he had the right to make the contract his son was not a necessary party to it. The bill makes the son a party defendant, and we see no reason why the contract was not mutual and could not be enforced by either of the parties thereto, one against the other. If William Eppstein had held the legal and equitable title to any portion of the premises,—*i. e.,* had been the actual owner thereof,—the contract, not being signed by him, would be wanting in mutuality. But that is not this case.

The contract provided that the premises should be conveyed to the appellant free from any and all encumbrances. There was a dispute as to the rights of the tenant,—whether his lease was from month to month or for a term of years. If his tenancy was for a term of years the lease was an encumbrance on the property. The bill alleged that appellant made a tender of the balance due upon the contract but demanded a deduction of the value of the lease. Appellee sought to compel him to take it subject to the lease. The bill seeks to have the parties interplead, determine their respective rights and deduct from the contract price the amount of depreciation. This the appellant had a right to demand, and the court had a right to provide for it in the decree. In the case of *Lancaster* v. *Roberts,* 144 Ill. 213, we said (p. 226): "In suits by the purchaser for specific performance, where the vendor is unable to make complete title, the general rule (for it is not universal) in all such cases is, that the purchaser, if he chooses, is entitled to have the contract specific-

ally performed as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate." To the same effect are *Hunt* v. *Smith,* 139 Ill. 296, and *Bishop* v. *Newton,* 20 id. 175.

We are therefore of the opinion that the allegations of the bill, when taken as true, were at least sufficient, upon demurrer, to entitle appellant to the relief, and the court committed error in sustaining the demurrer and dismissing the bill. The decree will therefore be reversed and the cause remanded.            *Reversed and remanded.*