(No. 13352.—Decree affirmed.)

OLIVER L. MITCHELL, Appellant, *vs.* C. W. WHITE *et al.*
Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 9, 1920.*

1. SPECIFIC PERFORMANCE—*general rule where the vendor is unable to make complete title.* Where the vendor in a contract for the sale of land is unable to make complete title, the purchaser, if he chooses, is entitled to have the contract specifically performed so far as the vendor can perform it and have an abatement out of the purchase money or compensation for any deficiency in the title.

2. SAME—*party demanding specific performance must meet all requirements of the contract.* Before specific performance will be awarded all conditions of the contract imposed upon the party seeking performance must be performed by him, unless the parties have by their own interpretation of or attitude toward the contract abandoned some feature of it or treated it as not subject to strict construction or performance.

3. SAME—*when failure to make election precludes right to specific performance.* Where a contract for the exchange of land provides that in case either party cannot make complete title the other party shall have the option, on giving certain notice, to either abandon the contract or take the title subject to objections, a failure to make an election when the other party is unable to make his title good within the time limited by the contract precludes the right to specific performance.

APPEAL from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

LESLIE H. WHIPP, for appellant.

CHARLES H. BOWLES, JAMES E. BOWLES, and ORVILLE D. STUART, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, Oliver L. Mitchell, filed his bill in the circuit court of Cook county to compel the specific performance of a written contract for the exchange of real estate. The agreement in question was entered into on the 26th day of October, 1917, by and between appellant and appellees Clar-

ence W. White and Erma White, his wife, by which the Whites agreed to convey to appellant, by a general warranty deed, 2500 acres of land situated in Poinsett county, in the State of Arkansas, which land was to be selected by appellant out of a tract of 3600 acres. The consideration named in the contract for the land was $25,000. The Whites were to convey the land free and clear of all incumbrances, subject only to certain taxes and assessments. Appellant was by the contract to convey to the Whites, by a general warranty deed, certain real estate in the city of Chicago valued in the contract at $25,000, said real estate to be free and clear of all incumbrances, subject only to existing liens for taxes and assessments. It was further agreed that each party was to furnish the other, within a reasonable time from the date thereof, a complete merchantable abstract of title or merchantable copy thereof brought down to the date of the contract, showing good and sufficient title to the property at the date of exchange of deeds by the respective parties, free and clear of all incumbrances except as noted in the contract. It was further agreed that in case of an abstract or a copy being furnished, the party receiving the same should within ten days thereafter deliver to the other party or his agent, together with the abstract, a note or memorandum in writing signed by him or his attorney specifying in detail the objections to the title, if any, and if there were no objections, stating, in substance, that the title was satisfactory. It was further agreed that should material defects be found in the title and so reported, then if such defects were not cured within sixty days after notice thereof, the contract should, at the option of the party delivering such objections, become absolutely null and void and notice of such election was to be given to the other party, but the party delivering such objections had the right to elect to take such title as it then was, and in such case the other party was bound to convey as agreed, provided the party delivering such objections should first

give written notice of such election within ten days after expiration of the sixty days and tender performance on his part. It was also agreed that in default of such notice of election to receive such title within the time limited, the party delivering such objections should without further action by either party be deemed to have abandoned his claim upon the premises, and thereupon the contract should cease to have any force or effect as against the premises or the title thereto or any right or interest therein, but not otherwise. Time was to be the essence of the agreement and of all the conditions therein.

The contract was signed by all the parties October 26, 1917, and placed in escrow with the Northern Trust Company of Chicago on the same day, pending the selection by appellant of the 2500 acres of land out of the 3600 acres belonging to White, the examination of the abstracts and the closing of the deal. Within a few days thereafter appellant went to Arkansas and selected 2500 acres of land out of the 3600-acre tract which White owned and gave his selection to White in writing, and abstracts were furnished to both properties. The property of appellant was found to be clear of incumbrance, but upon examination of the abstract of title to the Arkansas land the entire tract of 3600 acres was found to be incumbered by two mortgages,—one for $14,400 to the Missouri State Life Insurance Company, and a second for $10,000 owned by Lincoln S. Heafield. On December 18, 1917, an opinion in conformity with the contract was rendered showing the foregoing liens against the Arkansas land. Subsequent to the furnishing of the above objections the National City Bank of Chicago acquired a lien on the land in question in the amount of $2500, in the nature of an attachment proceeding based upon a judgment rendered against White in Cook county, Illinois. Appellee Carl E. Ehrhardt signed an agreement written on the contract that he would clear the land to be conveyed by the Whites of all liens claimed

by him. The evidence of appellant is that he said he controlled the $14,000 and $10,000 liens on this land. Ehrhardt testified positively that he did not control these liens, and the record does not support the contention that he, in fact, did. He testifies that he was induced to sign the agreement written on the contract because White owed him $3000 and appellant feared he would reduce this debt to a judgment and file it as a lien against said land. This agreement does not specify what liens, if any, were claimed by him. On January 19, 1918, appellant tendered a deed of his Chicago property to appellee William A. Bowles in accordance with the direction of White and demanded of White a deed for the land in question, free and clear of all incumbrances. White thereupon stated that he was financially unable to remove the liens on the land in question but offered to convey the land to appellant as it then stood. This offer appellant refused to accept.

The record contains evidence of various transfers affecting the Arkansas property. It appears that on October 23, 1917, White and his wife conveyed the entire 3600-acre tract to his brother-in-law, William A. Cassell, for the purpose, as he said, to prevent liens attaching to the property. Cassell, the evidence also discloses, on April 16, 1918, gave a trust deed purporting to secure the payment of $40,000, with interest, to Bowles, which the evidence shows was entirely without consideration. The record also discloses that Cassell by his warranty deed of November 23, 1917, conveyed the entire 3600 acres of land to appellee James P. Quinlan as trustee.

There is considerable evidence in the record concerning conferences between appellant and White and their counsel for the purpose of devising some means by which the liens against the Arkansas land could be released. The record does not disclose just when these conferences occurred, but it is evident from reading the testimony of the witnesses that the greater portion of them occurred before January

19, 1918, on which date the appellant tendered his deed to White and Bowles and demanded a deed to the Arkansas property free and clear of incumbrances. Nothing, however, was done beyond this until March 7, 1918, when appellant filed his bill herein.

By the terms of the agreement the parties thereto had ten days after receiving an abstract or copy thereof in which to present objections in writing to the title, if any existed. Pursuant to the agreement in this regard, appellant on December 18, 1917, served on White, in writing, his objections to the title to the Arkansas land. Under the further terms of the agreement White thereupon had sixty days after December 18 in which to remove the defects in the title. The contract also provided that if the defects were not cured in that time appellant had the option of voiding the contract, or, on giving written notice within ten days after expiration of said sixty days, to tender performance on his part and elect to take title to the Arkansas land as it stood, and upon such election being made White was bound to convey. At the time of the tender of appellant's deed on January 19, 1918, the sixty days in which White might remove the objections to the title had not elapsed. At the time the bill in this case was filed the sixty days had elapsed and also more than the ten days in which appellant might file in writing his election to take the title as it stood, and while, as we have said, there was some conversation about the matter which appellant insists amounted to an agreement between the parties that he should take the Arkansas property and retain a mortgage for the amount of $14,400 due on the land to the Missouri State Life Insurance Company, there appears to have been no written notice of an election given by appellant at any time to take the title as it stood. The rule in this State is, that where the vendor is unable to make complete title, the purchaser, if he chooses, is entitled to have the contract specifically performed so far as the vendor can perform it and have an

abatement out of the purchase money or compensation for any deficiency in the title. (*Kuhn* v. *Eppstein,* 219 Ill., 154; *Lancaster* v. *Roberts,* 144 id. 213; *Hunt* v. *Smith,* 139 id. 296.) Had appellant exercised his option to take the title as it stood, in the manner provided by the agreement for the exercise of such option, he would have been in a much better position to have demanded specific performance so far as White was able to perform, but there is no evidence whatever of his exercising that option in any manner,—particularly in the manner required by the contract. The rule is, that before a specific performance will be awarded all conditions of the contract must be met by the party seeking performance. (*Bothwell* v. *Schmidt,* 248 Ill. 586.) This applies as well to the manner in which he is to exercise his option as it does to the manner in which he is to perform his part of the contract. One cannot seek specific performance of a contract unless he has put himself in a position to demand performance by meeting all requirements of the contract upon which such demand is based. (*Wood* v. *Sheffer,* 248 Ill. 617.) An exception to this rule is, of course, where the parties to the contract have by their own interpretation of or attitude toward it abandoned some feature of the contract or treated it as not subject to strict construction or performance. There is no evidence of such being the case here. The contract was drawn by appellant's counsel. There appears from this record no reason why appellant should not, if he desired to enforce specific performance, have served upon White his election in writing to take the property as the title stood. The evidence, however, discloses that even in the conferences and consultations the attitude of appellant was that at least a portion of the liens against the land must be satisfied or removed before he would consent to take the title. We are of the opinion, therefore, that appellee has not put himself in a position to demand specific performance of this contract, but that, by reason of his failure to make his election in

the time limited by the contract, his right to specific performance was forfeited and the contract became of no effect. This being true, White, or anyone for him, was in a position to deal with the property as he saw fit.

We are of the opinion that the circuit court did not err in dismissing appellant's bill for want of equity. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*