J. I. TRIPLETT, JR., AND WIFE; STANTON WALKER, AND WIFE, AND PRUDENTIAL MORTGAGE COMPANY, *Appellants*, v. BREVARD PROPERTIES, INC., A CORPORATION, *Appellee*.

Division A.

Opinion Filed November 7, 1927.

*P. L. Gaskins, Bayard B. Shields* and *Loftin, Stokes & Calkins,* for Appellants;

*Kay, Adams, Ragland & Kurz,* for Appellee.

ELLIS, C. J.—The appellants appealed from an order overruling their demurrers to the bill of complaint exhibited against them by the appellee in the Circuit Court for Duval County for a specific performance of a contract for the sale of lands.

A contract was entered into between Triplett and wife and Walker and wife of the one part, and Brevard Properties, Inc., of the other part. All formalities of the law as to execution of the instrument by the parties were observed. The subject matter of the contract was a tract of land in Duval County containing about twenty thousand acres which was subdivided and platted into lots or farms containing about twenty acres each; the whole intersected by roadways in such manner that each inside lot or farm fronted upon a public road about six hundred and sixty feet. The lots were rectangular in shape, the dimensions being about one-eighth by one-fourth of a mile. The property was known later as "the Maxville Farms."

The contract was dated May 22, 1925, but at that time Triplett and Walker were not its owners and that fact

was known to the purchaser. The sellers, however, did have a contract for the purchase of the land with H. L. Parr, who had acquired it in 1921.

The price to be paid for the land was $12.00 per acre. Fifty-nine thousand dollars of the purchase price to be paid in cash upon the execution and delivery by the sellers of a "warranty deed." Five thousand dollars were paid on the purchase price when the contract was executed.

A policy insuring the title to the properties was to be furnished by the sellers; the buyers to pay $1,000.00 toward the cost of it and to have a period of fifteen days after notification that the deed and policy were ready for delivery in which to pay the remainder of the cash payment and execute notes and mortgage for the balance.

The contract recited that the transaction contemplated the acquisition by the purchaser of twenty thousand acres of land, but if title insurance was tendered covering as much as nineteen thousand acres and less than twenty thousand the sellers should have the *option* to "substitute the proper title insurance acreage of contiguous holdings" by them to make up the difference. It was provided that if the transaction should fail under its terms, then the cash payment of five thousand dollars should be refunded to the purchaser by the sellers. The conveyance was to have been "subject to the right-of-way of the Seaboard Air Line Railway and State Road No. 13 as now constituted," and due allowance to be made therefor "in fixing the purchase price per acre."

The bill set out in its allegations the evidence which the pleader conceived established a breach of the contract by the sellers, which consisted of their refusal to execute the deed and provide the title insurance as agreed and then offering to refund the cash advancement of five thousand dollars on the ground that the transaction had failed.

The bill alleged that the Prudential Mortgage Company, one of the defendants, was organized in October, 1924; that Triplett and Walker are controlling stockholders, officers and directors of the company and on June 13, 1925, caused to be conveyed to the corporation by H. L. Parr and wife the land which the sellers had agreed by their contract to convey to the complainant, including the contiguous acreage owned by them to which reference was made in the contract, to be conveyed to complainant to make up the full twenty thousand acres in the event title insurances could be obtained for only nineteen thousand acres; that the mortgage company had full knowledge of the agreement between the complainant and the defendants, Triplett and Walker.

It was alleged that that company pretended to advance the money to Triplett and Walker to make the purchase and took title to the land as security, but in fact Triplett and Walker supplied the money and are the real owners of the property; that the complainant had no knowledge of the execution of the deed to the Mortgage Company until July 8, 1925, and the complainant has at all times been ready, willing and able to perform the contract on its part to be performed.

The bill recites at some length the controversies between the parties concerning the property and the contract in relation to it and the respective rights of the parties thereunder. From these recitals of fact it may be inferred under the attack of the general demurrer that the sellers about June 4, 1925, advised complainant's counsel that the Title Policy Company would issue a policy of clear title to only about sixteen thousand acres of the property described in the contract, and on the 16th, three days after the conveyance of the land to the Mortgage Company, offered to refund to the complainant the five thousand

dollars cash payment made when the contract was executed; that there was in fact about 17,129 acres as to which title insurance could be obtained, and the purchaser notified the sellers that it was willing to accept their warranty deed without title insurance for about 1,845 acres, making a total acreage of 19,074 to which title could be conveyed by defendants under the contract acceptable to complainant; that defendants declined the offer of settlement and again on June 30th complainant submitted to defendants, by way of settlement of the differences, a proposition embracing three elements: First, defendants should convey by warranty deed such lands as could be covered by title insurance without exception; second, as to such lands as only title insurance with exceptions could be obtained, defendants would convey by special warranty and, third, as to the remainder of the 20,000 acres complainants would accept defendants' quit claim deed; that in the meantime complainant should be supplied with the form of title insurance to be written and abstracts of title including a list of lands to be covered by warranty deed, a list of lands to be covered by insurance with exceptions, and a statement of the exceptions, a list of lands as to which no title insurance could be obtained, a draft of the three deeds and a statement of taxes, mortgages and other liens against the property.

This proposition was accepted by the defendants the following day, July 1, upon the conditions that the transaction be closed by July 13th but as of July 1st. Defendants' claimed that the proposition of complainant of June 30th was made by defendants about thirty days before and complainant declined it; that if it had accepted it the transaction could have been closed in June.

The bill alleges that after the defendants accepted on condition the proposition as above stated they wired that

complainant must accept the condition by July 3rd; that notice was given by telegram to Mr. Watson, complainant's secretary, at Miami, Florida, but Mr. Watson had gone to Key West and the president of complainant corporation advised Mr. Triplett by telegram of that fact but that the company would probably accept and would telegraph Mr. Triplett upon Mr. Watson's return.

On July 7th Mr. Triplett revoked his offer of July 1st. Upon the same day complainant, through its counsel, wrote Mr. Triplett of the Company's acceptance of the Triplett modification of complainant's offer of June 30th, but the defendants refused to recall the revocation of their offer of July 1st accepting complainant's proposition with the condition annexed that the transaction be closed by July 13th as of the 1st day of July.

Such a lengthy statement of the case as presented by the bill is probably unnecessary, but it may serve to make clearer the reason for the conclusion reached by the Court.

It is contended by appellants that the demurrer should have been sustained because equity will not enforce a contract by decreeing specific performance where it appears the party sought to be bound is unable to fully perform, especially where it is shown that when the contract was made each party was on notice that the vendor might not be able to perform.

The answer to that proposition is contained in the case made by the bill. It does not appear that the vendors were unable to perform, upon the contrary it appears that they were able to perform in a manner acceptable to complainant and after correspondence they agreed upon the manner of performance.

The case of Rose v. Henderson, 63 Fla. 564, 59 South. Rep. 138, is not analogous. In that case the land was owned by Henderson and two married women, his sisters. They

acquired the land by inheritance. The contract, which was one for the conveyance of the entire interest, was not executed as the statute required as to the two married women. As there could be no specific performance of the contract against them the Court refused to enforce it against Henderson as to his undivided one-third interest. All parties in that case know of the exact condition of the title. It was not a question of the purchaser accepting whatever title the vendors could convey without an abatement of the price. It was known that each of the three vendors had an undivided one-third interest and a defective contract was executed for the entire interest. It could not be enforced as to the married women and the Court refused to enforce it as against the limited interest of Henderson.

In the case at bar, the defendants obtained a title which the complainant was willing to accept without abatement of the price, and the parties agreed on the number of acres to be conveyed and the insurance of title as to them. It was not a case of impossibility of performance. It was a matter of waiving full performance as to the quality of title to be conveyed only as to a relatively small portion of the entire acreage and without abatement of price. See 25 R. C. L., p. 248; Kuhn v. Eppstein, 219 Ill. 154, 76 N. E. Rep. 145, 2 L. R. A. (N. S.) 884; Keepers v. Yocum, 84 Kan. 554, 114 Pac. Rep. 1063, Ann. Cas. 1912A 748; Melin v. Wooley, 103 Minn. 498, 115 N. W. Rep. 654, 22 L. R. A. (N. S.) 595.

The vendor is estopped from asserting his inability to perform so the vendee may have specific performance of the agreement to the extent that the grantor is able to transfer title and comply with his agreement of sale. Melin v. Wooley, *supra.*

The argument of appellants gives to a minor phase of

the contract, the furnishing of title insurance covering the greater part of the lands, the importance and controlling consideration due to the real purpose of the agreement; which was the acquisition of the lands by the purchaser.

There is no virtue in the contention that as the vendee had knowledge of the fact that the vendors at the time of the contract did not have a clear title to a portion of the property and had only a contract to acquire the legal title and did not know of the defects in the title, the vendee cannot have specific performance; because it affirmatively appears from the allegations of the bill that the defendants did acquire the property from their vendor, that the matter of title insurance to a portion of the lands, which was a clause for the purchaser's benefit, was agreed upon and that the purchaser offered to comply with the terms of the agreement on its part to be performed although waiving some feature of the contract made for its benefit.

It is urged by appellants that the parties agreed that on failure of title the contract shall be rescinded, and as the title of vendors failed as to the entire acreage of twenty thousand acres the complainant cannot have specific performance. Even if such a clause, if it existed, should have the effect contended for by appellants, we do not find anything resembling it in the contract. The agreement expressly recited that it contemplates the acquisition by the purchaser from the seller of twenty thousand acres of land, which were described separately in three distinct tracts. It was provided that in the event title insurance is tendered covering as much as nineteen thousand acres "then for whatever difference above nineteen thousand (19,000) and below twenty thousand (20,000) acres may exist not so covered by title insurance it shall be the option of the first parties to substitute the proper title insurance

acreage of contiguous holdings by the first parties sufficient to make the twenty thousand (20,000) acres contemplated.'' That clause was solely for the benefit of the vendors.

The contract then provided that in the ''event the transaction shall fail under the terms hereof then in such event the sum of Five Thousand ($5,000) Dollars hereunder paid shall be refunded by the first parties unto the second party.'' The contract provided in a preceding clause that accompanying a warranty deed conveying a merchantable title free and clear of all liens and encumbrances there should be as part of the transaction a ''policy insuring the title to the property'' described. But the bill alleges the willingness of the purchasers to accept a deed for the 20,000 acres with general warranty, or for 19,000 with title insurance on the insurable portions, relieving the sellers from supplying insurance on the full acreage. This waiver was within the complainant's rights as it may have specific performance to the extent that the grantors are able to convey title and comply with their agreement of sale. The contract was severable so far as the conveyance of title and the procurement of title insurance was concerned. If the failure to procure the latter is due to the fault of the defendant it is elementary that the vendee may waive that condition and accept from the vendors performance of the remainder. It is also true that where there is inability on the vendor's part to convey good merchantable title to a relatively insignificant part of the land the vendee may insist upon a conveyance of the remainder; whether with or without abatement of price depends upon conditions not appearing in this case. 6 English Ruling Cases 661.

The decretal order of the chancellor is affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.