CHARLES N. WHITMAN

*v.*

HENRY C. FISHER.

1. JUDICIAL SALE — *not affected by reversal of decree.* The reversal of a decree construing a will as authorizing the executors to sell and convey land at private sale, on mere errors in the proceedings, will not avoid a sale made by the executors to a *bona fide* purchaser for value, if the court rendering the decree had jurisdiction of the subject matter, and of the persons of those interested.

2. JURISDICTION — *depending on term of court being held.* Where executors gave notice of applying to the circuit court on a certain day in the

next term, being the fourth day, for an order to sell lands to pay debts, etc., and filed their petition before the first day of such term, but no court was held at such term, it was held that the proceeding was continued by law, and the court had jurisdiction at a succeeding special term to render a decree.

3. JUDICIAL SALE — *presumption in favor of jurisdiction.* After the lapse of over twenty years from a sale and conveyance of land by an executor made under a decree of a court of competent jurisdiction, for a full consideration to one buying in good faith, every reasonable intendment will be indulged in favor of the jurisdiction of the court making the decree, rather than to hold the sale invalid, and the action of the court will be referred to its statutory or general jurisdiction, as may be necessary to maintain its jurisdiction.

4. PROCESS — *service in chancery cases.* An indorsement of service of a chancery summons, " executed by leaving copy with A. B. and C. (the defendants), this," etc., is sufficient to confer jurisdiction of the persons of the defendants, its obvious meaning being that the officer delivered a copy to each of the defendants.

5. ADMINISTRATOR'S SALE — *power of court to order.* A court of equity has no original jurisdiction to order the sale of real estate of a deceased person to pay debts, or for any other purpose, so as to bind the infant heirs' legal estate. The power is derived ˙from legislative authority, and does not exist except in cases where the statute expressly confers it.

6. CHANCERY JURISDICTION — *to construe wills.* When purely legal titles are involved, and no other relief is sought, a court of equity will not assume jurisdiction to construe a will, but will remit the parties to their remedies at law ; but if any trust is reposed in the executors, they may seek the aid and direction of a court of equity in the management or execution of the trust.

7. SAME — *when executor has a trust.* Where, by the terms of a will, the executors are charged with the administration of the assets of the estate differently from that directed by the statute, this will create in them a special trust, and in case of doubt as to the mode of its execution, a court of equity will assume jurisdiction on application by the executors for a construction of the will.

8. PURCHASER — *not affected by application of purchase money.* Where power is given by will to executors to sell real estate to raise funds with which to pay legacies, as the legatees become of age, a sale and conveyance made after one of them arrives at majority, being in the due execution of the trust created, will be valid, even though the proceeds are applied in the payment of the testator's debts. The purchaser is not required to see to the proper application of the purchase money.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

This was an action of ejectment, by Charles N. Whitman against Henry C. Fisher, for the recovery of an undivided interest in a tract of land sold and conveyed by the executors of Seth S. Whitman, deceased, to John Fisher, in his lifetime. The substantial facts of the case appear in the opinion. A trial was had before the court alone, resulting in a finding and judgment for the defendant.

Messrs. WILLIAMS & THOMPSON, and Messrs. CRAWFORD & MARSHALL, for the appellant.

Mr. C. M. BRAZEE, and Mr. WM. LATHROP, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Both parties in this action claim title to the premises described in the declaration from a common source, viz.: under the will of Seth S. Whitman, in whom was the legal title at the time of his death.

The testator, after directing the payment of his debts out of his personal estate, unless some other arrangement could be made, and the erection of a suitable family residence near Janesville, made provisions for the payment of specific legacies to each of his children, as they respectively became of age, then disposed of all his property as provided in the tenth paragraph of the will, as follows: "10th. That after my youngest surviving child becomes of lawful age, the residue of all my property at that time be divided as follows, viz.: To my beloved wife, Matilda Whitman, I will and bequeath one-third of my property for her support and maintenance during her natural life, and at her decease to be divided between my surviving children, or given for missionary purposes, at her discretion; and the other two-thirds of my property be equally divided between my son C. Coldon Whitman, Julia H. Whitman and Charles N. Whitman."

Proof was made that appellant was the youngest child surviving the testator, and having become of age, it is under this clause of the will he claims an undivided interest in the premises as devisee, and as heir at law of his brother C. Coldon Whitman, who died after the will was admitted to probate, without leaving him surviving wife, child or descendants of any child or children.

Appellee is the heir at law of John Fisher, who was the purchaser of the entire premises at a sale made by the executors named in the will. The title derived under this sale, it is now insisted, is the paramount title. The principal question, therefore, that presents itself, is, whether the title in fact passed to John Fisher, by virtue of the executor's deed of the date of April 19, 1854.

The executors being in doubt as to whether they had the power under the will to sell real estate for the purpose of paying debts and for other purposes named in the will, filed in the circuit court of Boone county a petition or bill in chancery, and among other things they asked the court to construe the will in this regard. The heirs were all made defendants to this proceeding, by due service of process, and on the final hearing the court decreed that "the executors have and rightfully and lawfully may exercise the power to sell and convey the above described real estate, of which the said Seth S. Whitman died seized, either at private or public sale, for the purposes and objects specified in the said will."

Under this decree, or under the will as thus construed by the decree, the executors sold at private sale for a full price, and conveyed the land to John Fisher. The sale was made in 1854, but in 1859 the decree of the circuit court construing the will was reversed on error in this court. It is conceded, however, that neither the reversal of the decree nor errors in the proceedings would avoid the sale, provided the court that pronounced the decree had jurisdiction of the subject matter and person of appellant.

Treated as a proceeding under the statute for leave to sell

real estate to pay debts, it is insisted the order of sale was clearly void. The notice of the application was, the executors would apply on the 6th day of October, which would be on the fourth day of the October term, 1853. The court for that term should have convened on the third day in the month, but no judge appearing, it stood adjourned until the next day, at the hour of four o'clock, when, under the statute, it stood adjourned until court in course. No court being in session, proof of the publication of the notice could not be made at that term, and none was made until the December special term. Hence it is contended the court failed to acquire jurisdiction, and its future action was without authority of law, and therefore void.

Counsel cite in support of the position assumed the case of *Knickerbocker* v. *Knickerbocker*, 58 Ill. 399. That case does not sustain their view of the law.

The provision of the statute is : if no judge shall attend on the first or second day of any appointed term, the court shall stand adjourned without day, and all suits and proceedings therein " shall stand continued until the next term of the court, as if the same had been continued by order of the court." The reason for the decision in *Knickerbocker* v. *Knickerbocker* is, that neither the petition nor the notice of the application was filed at the term to which the notice was given, and hence there was no cause pending to be continued by operation of law. But that is not this case. Here, the petition or bill on which the court acted was on file at the date the court ought to have convened for the October term, and had been from the twelfth day of September previous. As was said in the former case, " jurisdiction of the subject matter is obtained by filing the petition." This was done, and there was a cause pending upon which the court at the October term could have acted and continued it if necessary, with leave to make proof of publication, but there being no court in session, the law continued the cause and the jurisdiction of the court was preserved.

The court had the undoubted jurisdiction, under the statute, to entertain a petition on the application of the executors for the sale of lands belonging to the estate, to pay the debts of the testator. Jurisdiction of the person of the appellant was acquired by publication of the notice of the application as required by the statute.

If no other reason existed, the court having had jurisdiction of the subject matter and the persons of the parties whose interests were to be affected, notwithstanding the decree was reversed for irregularity that intervened, the sale might still be maintained on the ground it was a judicial sale. It was made over twenty years ago. The purchaser bought in good faith, for a full consideration, and after the lapse of so great a period, every reasonable intendment will be indulged in favor of the jurisdiction of a court of general jurisdiction, rather than declare the sale invalid. The action of the court will be referred either to its statutory or general jurisdiction, as may be necessary to maintain its jurisdiction. It is, and has been, the policy of the law to maintain judicial sales, and in this policy the public interest is best subserved.

But the decision of this case need not be placed on this ground, although it could be maintained. We are not inclined to regard the proceedings as a petition under the statute to sell real estate to pay debts. However inartistically drawn, it has more of the elements of a bill in chancery than of a petition under the statute. The complainants, in their prayer, expressly invoke the aid of a court of equity, where the matters alleged are only cognizable. The summons issued was in chancery, and was served as the law directs such process shall be served. All the proceedings were treated as being on the chancery side of the court. When the cause was before this court, at a former term, it was not determined whether it was a proceeding in chancery or under the statute, but regarding it as either one or the other, there were errors in the record that would warrant a reversal of the decree. 22 Ill. 448.

Numerous objections have been taken to the regularity of

the proceedings in the circuit court, but as the validity of the title acquired under the sale is only collaterally attacked in this action, it will not be necessary to consider any but such as have respect to the jurisdiction of the court to pronounce the decree. These are, first: the court did not have jurisdiction of the person of appellant, and second, it did not have jurisdiction of the subject matter of the litigation.

As to the first point, on the filing of the bill a summons in chancery was regularly issued. It was returned by the sheriff with the following indorsement of service: "Executed by leaving copy with Ogden H. Whitman, Julia H. Whitman, Charles N. Whitman, this 14th day of September, 1853." The decree finds that "process has been duly served" on each of the defendants, and the return of the sheriff on the summons still among the files, on which the court must have acted, is not inconsistent with that finding. It is urged the service is defective for the reason it does not appear the officer left but one copy for all the defendants. The objection is hypercritical. The officer could not execute the summons, by copy, upon the several persons named in the return, without using more than one copy. The obvious meaning of the return is, he delivered a copy to each of the defendants. There were three defendants, and the fact that the officer charged fees for three copies aids the view we have taken.

The service required by the statute is by delivering a copy of the summons to the defendant. The sheriff, in this case, says he "executed by leaving a copy." "Delivering a copy" and "leaving a copy" are equivalent forms of expression, hence the service is substantially correct. *Buck* v. *Buck*, 60 Ill. 105.

The second objection urged raises the most serious question in the case, viz.: the court did not have jurisdiction of the subject matter of the litigation.

The theory of appellee is, it was a bill to have construed the will of Seth S. Whitman, and have the powers of the executors over the property under the provisions of the will determined ;

that it was a matter clearly within the chancery jurisdiction of
the court; that the court, having all the parties in interest be-
fore it, made its decree construing the will, declaring the
executors had lawful authority to sell the real estate of the
testator, and while that decree was in full force, John Fisher
having purchased the land in controversy, for a full price, on
the faith of the decree defining the powers of the executors
under the will, the decree must be held conclusive of the con-
struction of the will and the powers of the executors, and hence
the purchaser acquired an absolute title to the property as
against all persons claiming as devisee, or otherwise, under the
will.

On the other hand, counsel for appellant deny the court had
any jurisdiction to determine by construction of this will that
it contained a power of sale in the executors, or that the court
had any jurisdiction to make any decree affecting the title to
the real estate of which the testator died seized, or that the bill
states a case which called into action the power of the court,
and insist the decree, or order, so far as it concerned the land
which the testator devised to his children, was an absolute
nullity.

The proposition, a court of equity has no original jurisdic-
tion to order the sale of real estate to pay debts or for any
other purpose, so as to bind the infant's legal estate, is certainly
the law, and has for its support the best authorities. The
power is derived from legislative authority, and does not exist
except in cases where the statute expressly confers it. *Donlin*
v. *Hettinger*, 57 Ill. 348; *Rogers* v. *Dill*, 6 Hill, 415; *Onder-
donk* v. *Mott*, 34 Barr, 106.

But this exact question is not involved in the case we are
considering. The court did not assume to direct the sale of
the real estate of which the testator died seized, nor does the
title of appellee's ancestor rest upon any such principle. His
title is definitely placed upon the sale made by the executors
under the will as construed, and not upon any order of sale
made by the court. But counsel contend the court had no juris-

diction to determine by construction of the will it contained a power of sale in the executors, or that the court had jurisdiction to make any decree whatever affecting the title to the real estate, of which the testator in this instance died seized.

The principle contended for is, when no trust is created, neither the executor nor the heir or devisee who claims only a legal title in the estate, will be allowed to come into a court of equity for the purpose of obtaining a judicial construction of the provisions of the will. In a general sense this proposition is correct. Where purely legal titles are involved and no other relief is sought, a court of equity will not assume jurisdiction to construe the will, but will remit the parties to their remedy at law. The doctrine on this subject has been well stated by Chancellor WALWORTH, in *Bowers* v. *Smith*, 10 Paige, 193, and his statement of the rule with its qualifications is as accurate as any we have seen. The case of *Onderdonk* v. *Mott*, cited, *supra*, states the same general principles.

It is insisted the will created no trust in the executors in respect to the lands of the testator, that the legal and equitable title was in the heirs or devisees, and if the executors had any power of sale, it was a mere naked power, not coupled with an interest in the lands. Hence it is said the case comes within the rule stated in the authorities cited. Without regard to the question whether this is the true construction of the will, are there no facts in this case which bring it within the exceptions to the general doctrine contended for? All the authorities concur, so far as we have examined, where any trust is reposed in the executors, they may seek the aid and direction of a court of equity in the management or execution of the trust. Mr. Redfield, in his work on the law of wills, in stating some of the more recent rules of construction, adopted for declaring the legal effect of wills, says that such questions more frequently arise in courts of equity than in courts of law, "in consequence of the right of an executor or any other trustee, or even any *cestuis que trustent*, to apply to the former courts,

to determine the proper course to be pursued to carry such trusts into effect." 1 Redf. on Wills, 438.

In *Bowers* v. *Smith, supra,* it was ruled that " where there is a mixed trust of real and personal estate, it frequently becomes necessary for the court to settle questions as to the validity and effect of contingent limitations in a will to persons who are not *in esse,* in order to make a final decree in the suit, and to give the proper instructions and directions to the executors and trustees in relation to the execution of their trust." The chancellor then states the general rule, where there is no trust the heir is not allowed to come into a court of equity for the mere purpose of obtaining a judicial construction of the provisions of the will, but adds the important qualification, the decision of such legal questions belong exclusively to courts of law, except where they arise incidentally in a court of equity in the exercise of its legitimate powers, " or where the court has obtained jurisdiction of the case for some other purpose."

The facts in the case at bar bring it clearly in the equitable jurisdiction of a court of chancery as thus defined. The personal estate of the testator was in the hands of the executors, and they were charged with its administration in a manner other than as directed by the statute. This created in them a special trust. With the funds of the estate, they were directed to erect a family residence near Janesville. From what source, whether from the real or personal effects, the means for that purpose were to be derived, the will is silent. It was a question with the executors, whether the condition of the estate would justify the expenditure of a sum of money sufficient to erect a residence for the family as directed in the will. The widow of the testator, who was also one of the executors, was given the control of all the property of the testator until his youngest child became of lawful age, " for their support, education and maintenance." How was she to control all the property of the estate for the " support, education and maintenance " of the family ? No directions were given in the will.

These difficulties arising in the execution of the trusts imposed upon the executors, and which they had undertaken to perform, made it eminently proper for them to apply to a court of equity for its aid and direction in the premises. We have no doubt of the jurisdiction of a court of equity to afford the requisite relief. 2 Story's Eq. Jur., § 961; *Hooper* v. *Hooper*, 9 Cush. 127; *Dimmock* v. *Bixby*, 20 Pick. 368.

Upon proper bill filed the court had the undoubted jurisdiction to determine the question for the executors, whether the house for a family residence should be built from the funds realized from the personal or real estate, or, indeed, whether, in view of the embarrassed condition of the estate, it should be erected at all. This fact alone, if no other ground existed, conferred jurisdiction on the court, and having obtained it for one purpose, it is a familiar principle it would retain it for all purposes. Hence it follows, the decree under which appellee's ancestor purchased the property, was made in a cause where the court had jurisdiction of the subject matter and the persons of the parties. Having ascertained the court had jurisdiction, he could with safety purchase at a sale under its decree, notwithstanding there might be irregularities in its proceedings. He was not bound to know the court may have adjudicated questions over which it had no original jurisdiction. Being informed the court had jurisdiction for one purpose, he could rightfully conclude it had jurisdiction for all purposes. Any other rule would be unreasonable and would expose honest purchasers at judicial sales to great hazards.

The widow was given the " control of all the property " until the youngest child should become of age, for " their support, education and maintenance," and it is a grave question, whether this grant of power did not itself imply a power of sale as to all the property, real and personal, for the purposes indicated, according to the construction given to the will by the court in its decree. But in the view we have taken it is not necessary to express an opinion on this question. The validity of appellee's title may be maintained on the ground indicated, viz.: The

land was purchased by his ancestor under a decree of court pronounced in a cause where it had jurisdiction both of the subject matter and the persons of the parties.

But there is another view that can with great propriety be taken, which is conclusive of the rights of the parties. The testator made certain bequests to each of his children, payable respectively as they became of age. Power is expressly given to the executors to sell real estate for the purpose of raising funds with which to pay these several legacies. Ogden H. Whitman, one of the beneficiaries under the will, became of age in 1852, and was entitled to the bequest in his favor. The sale to John Fisher was made in the spring of 1854. It does not appear but the exact case had arisen where the executors had the clear right under the will to sell real estate independently of the decree of the court. The purchaser was under no obligation to see to the application of the purchase money. Hence it follows, the deed of the executors in the due execution of their trust passed all the title of the testator to the purchaser of the land in controversy.

The finding of the court was correct and its judgment must be affirmed.

*Judgment affirmed.*

BREESE, J.: I am not prepared to concur in the conclusions reached in this opinion.