Alfred S. Arnold *et al.* Defendants in Error, *vs.* William Lewis Arnold *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1927—Rehearing denied June 8, 1927.*

1. Wills—*what determines intention to charge specific devises with legacies.* If a testator intends that legacies bequeathed shall be a charge on land specifically devised that intention will be given effect, and the intention may be determined from express directions in the will or it may be implied from the whole will.

2. Same—*equity may construe will at suit of executors charged with trust—conversion.* Where executors are charged with a special trust in the administration of an estate a court of equity will construe the will at the suit of the executors and direct the manner of the administration of the trust, and in the exercise of such jurisdiction the court may direct the conversion of real estate into money and order a re-investment where the estate of an infant is involved.

3. Same—*when remaindermen must contribute to make up the legacies.* Where a testator divides real estate into equal parts

among five children and gives legacies to two other children equal to the market value of each real estate share devised, with a provision that if there is not sufficient personalty to make up the legacies then each tract of real estate "of all the rest of my children" shall be assessed a sufficient sum to make up the legacies, the interest of remaindermen in one tract given to one of the children for life must contribute to make up the legacies where other liabilities exhaust the value of the life estate and where there is no provision exempting the remainder from such liability.

4. JUDGMENTS AND DECREES—*when purchaser in reliance upon decree will be protected against reversal.* Reversal of a decree affecting title to land for error in the proceeding, when the court had jurisdiction of the subject matter and of the parties, will not affect the title of a purchaser who buys in good faith and in reliance upon the decree before a writ of error is sued out or other action taken to avoid the decree, as in such case the purchaser will be protected even if the decree is reversed or set aside.

5. APPEALS AND ERRORS—*when a mortgagee who purchases at foreclosure is not necessary party to writ of error.* A mortgagee who has become the purchaser at foreclosure is not a necessary or proper party to a writ of error to review a decree construing a will where the loan was made in reliance on the decree giving a certain construction to the will and the writ of error was not sued out until after the mortgage was given and foreclosed.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. T. M. HARRIS, Judge, presiding.

CHARLES M. PEIRCE, and CHARLES P. KANE, for plaintiffs in error.

M. A. BRENNAN, EARL W. WILEY, and MORRISSEY & MORRISSEY, (JOHN O. MORRISSEY, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The bill in this case was filed by Alfred S. Arnold and Hettie Arnold Mahon, executors of the last will of William Scott Arnold, to construe his will.

William Scott Arnold died testate January 9, 1917. His will was admitted to probate January 29, 1917. He left seven children surviving, as his only heirs. His estate con-

sisted of some personal property, four eighty-acre tracts of land in Blue Mound township, in McLean county, which constituted the home farm, one eighty-acre tract in Dawson township, in McLean county, two residence properties in Bloomington, and 640 acres of land in the State of Texas. The will was executed December 9, 1916. The testator desired to divide his estate, real and personal, consisting of five tracts of land of eighty acres each in McLean county, two residence properties in Bloomington, 640 acres of land in Wheeler county, Texas, and all his personal assets and claims due him at his death, as nearly equal as possible, among his children, and named two of his children, Alfred S. Arnold and Hettie Arnold Mahon, as executors. He gave to his daughter Mary A. Wiley in fee simple the eighty acres of land known as the first eighty south of the improved eighty of the home farm; to his son William L. Arnold he gave during his life the improved eighty-acre tract of the home farm, which was the homestead, and at the death of said son "I hereby bequeath, give and grant to the surviving heirs of his body, and to such heirs only, the full title and ownership of said eighty acres on which is situated the said homestead with this understanding, that the sum of $3000 be considered a lien on the said eighty acres and that said sum of $3000 shall be considered as part of my personal estate after my death and shall be divided as the rest of my personal estate shall be divided according to the terms of this my will;" to his daughter Catherine L. Hassler he gave the south eighty acres of land known as the home farm; to his daughter Mattie A. Krieger he gave the north eighty of the home farm; to his son Oliver S. Arnold he gave $2000, and in addition the eighty acres of land in Dawson township; to his daughter Hettie and his son Alfred S. he bequeathed each a sum of money as nearly as possible to equal the value of the eighty south and the eighty north of the home eighty, "or in other words, give to the said son and the said daughter approxi-

mately $16,000 each, and in order to realize said sums do desire to have sold my 640 acres of Texas land, and to have sold, also, my residence properties, [describing them,] and as a further effort to raise such sums I desire to distribute all personal claims and property due me and belonging to me at my death.  If there is then insufficient sums of money to equalize the value of the aforesaid farms, to-wit, the north and south eighty, I desire that each eighty acres of all the rest of my children shall be assessed such a sum of money as will make the share of my estate which I have given to my daughter Hettie Arnold Mahon and my son Alfred S. Arnold equal to the market value of said north eighty and south eighty of home farm."   The last clause of the will directed that if any of the testator's children at the time of his death owed him money, such sums should be made a lien upon the share of the estate given such child or children and should be collected and placed with the personal property of the testator and be distributed as directed in the will.

The children of William L. Arnold claim that the contingent remainder in the eighty acres of land in which their father was given a life estate was not required to contribute to the payment of the money legacies given the testator's son Alfred S. and daughter Hettie but that only the life estate of their father could be required to contribute.

The executors filed a bill to construe the will and for necessary advice and direction to enable them to properly settle the estate.   After answers and replications were filed the cause was referred to the master in chancery to take proof and report his conclusions.   The master reported one of the eighty-acre tracts of land was encumbered for $4000 and two other eighty-acre tracts were encumbered for $2000 each.   He also reported that each of the children of the testator was indebted to him in amounts ranging from a few dollars in the case of the smallest indebtedness of any child up to approximately $7000, which was the indebted-

ness of William L. Arnold. The master made findings and
reported his conclusions as to the proper construction and
meaning of the will as intended by the testator. Objections
by defendants, who are plaintiffs in error here, were over-
ruled by the master and stood as exceptions in the circuit
court. They were overuled by the court and a decree en-
tered substantially as recommended by the master.

The decree was rendered July 2, 1920. The court found
it was the intention of the testator to devise an eighty-acre
tract of land to each of five children in fee simple except
William L., to whom the devise was for life with remain-
der to his children who survived him, but all the devises
were subject to a charge against each eighty-acre tract for
a proportionate share of any deficiency necessary to pay
the testator's debts and to pay legacies to the son Alfred S.
and the daughter Hettie; that the devise to William L. for
life, with remainder to his surviving children, was also sub-
ject to the charge of $3000, which represented the value
of his eighty above that of any of the other three eighty-
acre tracts of the home farm, as the improvements were
all on that tract. The decree finds the eighty acres in
Dawson township given to Oliver S. Arnold was of less
value than the other land, and $2000 in money was be-
queathed to him for that reason; that the testator intended
the bequests to Alfred S. and Hettie should equal in value
the other eighty acres devised. The court found from the
evidence that at the testator's death the land in Blue Mound
township was of the market value of $240 per acre and
the land in Dawson township devised to Oliver S. was of
the market value of $215 per acre, and that the legacies to
Alfred S. and Hettie should each be $19,200, the equivalent
of eighty acres at $240 per acre. The court found and de-
creed that the devise to William L. for life, with remain-
der to his children who survived him, was personal to that
branch of the family; that William L. at the time had four
children, all adults except one.

The proof showed William L. Arnold owed his father approximately $7000, and the decree found the tract of land given him for life and to go to his children at his death was liable for the amount he owed his father and also for the $3000 lien charged against it, and was also subject to a lien for a proportionate share of the contribution, if any was required, to pay debts and legacies; that the life estate should first be exhausted for their payment, but that the whole tract and interest therein, including that of the children, was subject to the liens. The court appointed Warren White trustee to conserve the interest of the children of William L., and he received a quit-claim deed from William L. for his life estate and holds the land subject to the order of the court. The trustee was authorized to procure a loan, if he could, of the amount required to pay all liens and claims against William L. and the land mentioned, not exceeding $16,500.

Part of the lands was incumbered at the time of the testator's death. The executors were directed by the decree to collect the sums found due from each devisee to satisfy the mortgages against the land and to pay the legacies.

The value of the life estate of William L. Arnold was less than the sum he owed his father plus the $3000 charged against it, to say nothing of its liability for the testator's debts and its liability for a proportionate share required to make all the shares devised and bequeathed equal.

Plaintiffs in error in their brief specify sixteen points in which they allege the decree is erroneous, but it is not necessary to take up separately each point. The material question necessary to decide this case, and to which question the argument of plaintiffs in error is chiefly devoted, is their contention that the remainder in the eighty acres of land devised to William L. Arnold for life was not subject to any lien or charge created by the will, but that all charges and liens created by that instrument against said tract were only against the life estate, and the remainder in fee went

to his children free from any lien or charge for any pur-
pose created by the will.

There is no dispute as to the rules of law governing the
construction of wills, but counsel for the respective parties
disagree as to the application of those rules to the will here
involved. As we have often decided, the cardinal rule in
the construction of a will is that the intention of the tes-
tator, to be determined from an examination of the entire
will, should be given effect unless contrary to public policy
or some rule of law. If the testator intended legacies be-
queathed should be a charge on land specifically devised
that intention will be given effect, and the intention may
be determined from the express directions contained in the
will or it may be implied from the whole will taken to-
gether. (*Heslop* v. *Gatton,* 71 Ill. 528; *Daly* v. *Wilkie,*
111 id. 382; *Simonsen* v. *Hutchinson,* 231 id. 508; *Spang-
ler* v. *Newman,* 239 id. 616.) It was the intention of the
testator to dispose of all his property so that his seven chil-
dren, except William L., should share equally. William L.
was indebted to his father for approximately $7000, and,
besides, several of his creditors had obtained judgments
against him, and an exception was made in his case by
giving him only a life estate with remainder in fee to his
children who survived him. The devise to him was a life
estate in the eighty acres with a remainder in fee to his chil-
dren, with the understanding that the eighty acres (which
is the homestead) was charged with the sum of $3000, to
"be considered a lien on the said eighty acres," and said
sum was to be considered as part of the testator's personal
estate and divided as the rest of his personal estate was
divided by the will. He gave to his daughters Mary,
Catherine and Mattie each eighty acres of the home farm,
which consisted of four eighty-acre tracts. He owned an
eighty in Dawson township, which was of less value than
the land in Blue Mound township, which he gave to his
son Oliver and also gave him $2000. The bequest to his

daughter Hettie and his son Alfred S. was of money, approximately $16,000 to each. It is plain from the language of the will that these bequests were intended to be equal in value to the land devised to the other children. Those bequests were to be paid out of the sale of the Texas land, the Bloomington property and the personal estate, and if there was a deficiency in the sum realized necessary to equalize the bequests, the land devised should be assessed a sum which would make the bequests to said son and daughter equal the market value of the north eighty and of the south eighty of the home farm. The executors were charged with a special trust in the administration of the estate, and there can be no doubt a court of equity had jurisdiction to construe the will and direct the manner of the administration of the trust. (Cahill's Stat. 1925, chap. 22, sec. 50; *Smith* v. *Sackett,* 5 Gilm. 534; *Whitman* v. *Fisher,* 74 Ill. 147; *Hale* v. *Hale,* 146 id. 227.) In the exercise of that jurisdiction the court had power to convert real estate into money and to re-invest it, where the estate of an infant is involved. *Roberts* v. *Roberts,* 259 Ill. 115.

In the devise to the daughter Hettie and the son Alfred S. the testator plainly recognized that there might be an insufficient amount realized from the sale of his Bloomington property and the Texas land, after the payment of debts, to make the bequest to them equal in value to the devise to each of the other children, and he directed that each eighty acres "of all the rest of my children" be assessed for a sufficient amount to make the bequest to Hettie and Alfred S. equal to the market value of the north and the south eighty of the home farm. The proceeds of the sale of the testator's other land and the personal assets collected were not sufficient to accomplish that purpose. No other reasonable meaning can be attributed to the language of the will than that it was the intention of the testator that in that event the lands devised should be assessed a proportionate share to make up the deficiency required to equalize

the gifts to his children. The only reasonable construction of the language of the will is that the testator intended that the eighty acres of land devised to William L. for life, with remainder to his children, should be charged with not only the $3000, but with any sum necessary to equalize the gifts among the testator's children after exhausting the personal estate, if any sum was required for that purpose. Of course, it was equitable to charge the life estate first, as between William L. and his children, but if that was insufficient,—and the proof shows it was,—it was a charge against the remainder as much as it was against the life estate. The reason is apparent for the testator giving William L. only a life estate with a remainder to his surviving children, because William L. was financially involved, not only owing his father but was unable to pay other creditors, and they had judgments against him. These liabilities exhausted the value of the life estate, and the court properly decreed that the remainder was liable for its proportion of the deficiency of the life estate required to equalize the devises and legacies.

The testator said he gave to the daughter Hettie and the son Alfred S. a sum of money as nearly as possible equal to the value of the eighty acres south of the home eighty and the eighty north of it, "approximately $16,000." It cannot be denied that the will plainly means he intended the devises and bequests to his children to be equal in amount. The proof shows that the four eighty-acre tracts of the home farm and the eighty acres in Dawson township, plus the $2000 in money, were each of the value of $19,200, and it became necessary to make the bequests to the daughter Hettie and the son Alfred S. equal to that sum, and if the personal estate and the real estate sold were insufficient to do that, the lands devised were chargeable with their proportionate share to make up the deficiency.

Plaintiffs in error in their brief and argument contend that William L. Arnold should be credited with the rents

received from the eighty acres devised him for life, and that if that is done his indebtedness will be greatly reduced or wiped out, and they say the decree should have so provided. The decree does require the executors to apply the net rents in their hands from the land devised to William L. for life and continue to rent the premises until payment by him or his children of the amount found due by the decree.

William Dee was not a party to the suit in the circuit court. The decree in that case appointed Warren White trustee of the eighty acres devised to William L. Arnold and his children, and authorized the trustee to borrow $16,500 and mortgage the entire interest of the life tenant and remaindermen in said eighty acres to secure the loan, which Dee knew nothing of until afterwards, when he was applied to to make the loan. After the decree had been entered he loaned $16,500 to the trustee, the entire amount of which was paid to and used by the executors in settling the estate, which loan was approved by the probate court. The trustee paid interest on the loan one year and then made default, and Dee filed a bill to foreclose. Plaintiffs in error, who are heirs or devisees of William Scott Arnold, their representatives and successors, were made defendants to the bill, answered it and resisted the foreclosure. After a full hearing the court rendered a decree of foreclosure. No appeal was prosecuted or writ of error sued out to review the decree. The land was sold under the decree and the time for redemption expired October 11, 1926. The decree construing the will now under consideration was rendered July 2, 1920, the loan was made and the mortgage recorded September 1, 1920, and no writ of error was sued out until June 14, 1926, and Dee was made a defendant to the writ of error then sued out. He avers he is not a proper party to the writ; that he was made a defendant for the purpose of a collateral review of the foreclosure decree, and asks to be dismissed. The motion to dismiss is accompanied by affidavit, a certified copy of

the report of the master in chancery in the foreclosure suit, and the decree of the court. The motion to dismiss as to Dee is resisted because the land in which he claims an interest is land involved in the action to construe the will, and having accrued since that suit was determined by the circuit court he is a proper and necessary party defendant to the writ of error in this case. The motion to dismiss was taken with the case.

Reversal of a decree affecting title to land for error in the proceeding, when the court had jurisdiction of the subject matter and of the parties, will not affect the title of a purchaser who buys in good faith and in reliance upon the decree before a writ of error is sued out or other action taken to avoid the decree. In such case the purchaser will be protected even if the decree is afterward reversed or set aside. This court said in *Smith* v. *Herdlicka,* 323 Ill. 585 : "Moreover, the law is well settled that when a decree affecting the title to property has been rendered by a court of equity having jurisdiction of the subject matter and of the parties, a purchaser who buys in good faith and in reliance upon the decree before a writ of error is prosecuted or other action taken to avoid it will be protected, notwithstanding the decree is afterwards reversed or set aside." Many decisions of this court are cited supporting that rule. (See, also, *Finlen* v. *Skelly,* 310 Ill. 170.) Inasmuch as Dee was an innocent purchaser in good faith, his title could not be affected by a reversal of the decree for errors in procedure and he was not a necessary or proper party to the writ of error. The motion to dismiss as to him is allowed.

In our opinion the decree correctly construed the will, and no error in the proceeding has been pointed out by plaintiffs in error to justify a reversal.

The decree is affirmed.

*Decree affirmed.*