Robert J. Watt et al, Appellees, v. Charles Cecil et al, Defendants, Lucy Rooney, Appellant.

Gen. No. 40,710.

Heard in the third division of this court for the first district at the February term, 1939. Opinion filed April 8, 1942. Rehearing denied May 7, 1942.

FRANCIS M. LOWES, of Chicago, for appellant.

ALBERT E. JENNER, JR. and BENNETT & COLBACH, all of Chicago, for appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

The action in this case was to foreclose a trust deed to secure payment of certain notes and coupons therein described. On January 26, 1937, a decree was entered finding certain defendants liable on all the said notes, and Lucy Rooney liable on all of said notes, except one note for $500 held by John C. Taylor, and decreeing the sale of the real estate in default of the payment of the amount so found due. Upon default of such payment the said premises were duly sold by the master to Kildare-Schubert Apartments Corporation, a corporation, for $17,000, which report of sale was duly made to and confirmed by the court on the 10th day of March, 1937. Lucy Rooney appealed the case to the Supreme Court, which rendered its opinion, finding that there was usury in the amount found due, and reversed the case, with the following language; "For the error in denying the claim as to usury the decree

is reversed, and the cause is remanded to the Superior Court, with directions to enter a decree in conformity with the views herein expressed.'' (See 368 Ill. 510.) Upon the filing of the Supreme Court mandate in the trial court, plaintiffs and certain defendants as noteholders whose interests were the same as complainants, and the said purchaser Kildare-Schubert Apartments Corporation, presented to the trial court another decree which was entered on July 6, 1938, over the objection of appellant, Lucy Rooney.

The decree of July 6, 1938 was substantially the same as the decree of January 26, 1937, except that it set aside the sale of January 26, 1937, and ordered a resale of the premises to be made by the master in chancery, and also found that the Kildare-Schubert Apartments Corporation had been formed by the holders of the said notes (excepting noteholder, John C. Taylor) and the attorneys for the plaintiffs to act for such noteholders and attorneys to protect their said interests.

On July 11, 1938, Lucy Rooney moved the court to set aside and vacate the said decree of July 6, 1938, and presented a decree which she asked the court to enter, which motion the court denied. Lucy Rooney here appeals from the decree entered on July 6, 1938, and from the denial of her motion to set such decree aside and to enter the decree presented with such motion.

Lucy Rooney, codefendant and appellant, appealed from the decree of July 6, 1938 direct to the Supreme Court of this State, contending that a freehold was involved. The Supreme Court entered an order in this cause directing that the same be transferred to the Appellate Court of Illinois, First District, and in its opinion did find and adjudicate that this cause was wrongfully appealed to the Supreme Court and that it was without jurisdiction to determine the questions of the appeal.

It appears from the record that appellant, Lucy Rooney, filed her answer in the cause alleging by way of affirmative defense and new matter, that the original loan had been usurious. It was alleged that although the aggregate face amount of the 54 notes was $23,000, the amount of money actually received by the original mortgagors, Charles and Margaret Cecil, from the Citizens State Bank was $21,750, the remaining $1,250 being retained by the Bank as a commission. No charge was made that the appellee noteholders had any connection whatsoever with the negotiations for or the consummation of the loan. Trial court counsel for appellees failed to file a reply to the answer. The cause was referred to a master in chancery without objection, and was tried and heard before him, neither side putting in any evidence on the question of usury or raising the issue as to the effect of the failure to file a reply. (*Watt v. Cecil*, 368 Ill. 510.) On appeal, the Supreme Court in an opinion by Mr. Justice JONES held that since no reply had been filed to the answer, the allegations of fact in support of the affirmative defense of usury stood admitted, even though the cause had been referred to and heard before the master without objection—since no evidence was introduced by any of the parties respecting the affirmative defense of usury.

Consequently, due solely to the failure of counsel for appellees to file a formal reply to appellant's answer, appellees, although innocent investors in the many small mortgage units involved in the cause, suffered a loss of some $8,550, which figure consists of the usurious commission of $1,250 retained by the bank, and approximately $7,300 of interest paid by appellant and her predecessors, which has been deducted from the principal indebtedness pursuant to the mandate of the Supreme Court. Appellant and her husband, Hugh Rooney, although they were subsequent purchasers who did not take part in the float-

ing of the original loan, gained that amount without having had to introduce an iota of evidence in support thereof.

The appellees contend that this appeal should be dismissed for failure of appellant to serve a copy of the notice of appeal on certain parties whose interests will be adversely affected by a reversal or modification of the decree, and for failure to serve Kildare-Schubert Apartments Corporation with the amended praecipe for record, and for failure to file a proper abstract of record. One of the points urged is that appellant failed to serve a copy of the notice of appeal on co-appellant, R. J. Hildebrandt, despite the fact that she seeks a substantial judgment against him in this court. It appears that R. J. Hildebrandt is a coplaintiff; that he was a party appellee on the former appeal; and that the Supreme Court assessed costs against him, which appellant collected after threatening execution levy against his coal business. In her second assignment of error, appellant asserts the chancellor should have entered judgment against Hildebrandt and the other plaintiffs for the difference between the reduced indebtedness and the amount bid at the sale; that a similar judgment should be rendered against Hildebrandt and his coplaintiffs for the total amount of the income of the property received by the receiver and expended pursuant to order of court. In the decree presented by appellant to the chancellor on her motion to vacate the decree from which she now appeals, it is provided that ''Hugh Rooney and Lucy Rooney have and receive from the plaintiffs, R. J. Watt, Mary Steinback, Ferdinand Jahn, Olga Peick and R. J. Hildebrandt, the sum of . . . $5,135.34, and that execution issue therefor.'' It appears that if the second decree be reversed or modified as appellant requests, R. J. Hildebrandt will be adversely affected. Rule 34 of the Supreme Court provides:

''(1) A copy of the notice by which the appeal is perfected shall be served upon each party whether

appellee or co-party, who would be adversely affected by any reversal or modification of the order, judgment or decree, and upon any other person or officer entitled by law to a notice of appeal, within ten days after said notice of appeal is filed in the lower court.'' Neither the notice of appeal nor any of the subsequent appeal papers were served upon Hildebrandt or his attorney.

In answer to appellees contention that the appeal be dismissed for failure to serve notice of appeal, the appellant calls attention to the fact that all of the appellees (except one who is not urging the point) have filed their brief herein upon the merits, and it is contended by appellant that they have, therefore, waived the failure to serve notice of appeal. It is further answered that the defendant, Hugh Rooney, the husband of appellant, does not seem to have filed an answer in the case, to the amended and supplemental bill on which the decree was based, and must have been defaulted to put the case at issue, and as the decree of January 26, 1937, recites that the case came on to be heard upon the amended and supplemental bill and the answer of Lucy Rooney and the exceptions filed by Lucy Rooney, it would not appear that these appellees can have the appeal dismissed because Lucy Rooney did not file service of notice of appeal upon her husband. Appellant urges that the appeal should not be dismissed by reason of anything urged in appellee's second point of their brief.

There was also the suggestion made that no notice of the amended praecipe for record was served on Kildare-Schubert Apartments Corporation. There does not seem to be much merit in the contention; as a matter of fact, it was served upon Bennett & Colbach, whom the records show were attorneys for the said corporation, and the said corporation is now before this court as a party to the case by the additional abstract filed by its attorneys and by the brief filed on behalf of said corporation by its attorneys. From the

facts appearing in the record, there does not seem to be any merit in appellee's contention that failure to serve notice of appeal as well as praecipe for record is fatal and that the appeal should be dismissed as to appellees.

It further appears from appellees' brief that Kildare-Schubert Apartments Corporation, purchaser at the sale, was not an innocent, good-faith, third party purchaser, without notice, and consequently it is immaterial whether this court treats the corporation as an entity, separate and distinct from the unpaid noteholders and their attorneys, who constitute the shareholders, the officers and the directors of the corporation, or whether the corporate veil be lifted and the unpaid noteholders treated as the actual purchasers at the sale. Kildare-Schubert Apartments Corporation, from its inception, had such a connection with the proceedings as to occupy the same position as a party. Appellant's position is that the said corporation "should be treated as an entity or person not a party to the cause, separate and apart from the said complainant and defendant noteholders and their attorneys." The appellees state that the literal observance of the distinction between the corporate entity and its shareholders, as urged by appellant, has always been surrounded by our Supreme Court with limitations and exceptions. The true position of the Supreme Court is announced in *Donovan v. Purtell*, 216 Ill. 629, where the court said:

"The fiction by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application, as frequently to induce the belief that it must be universal, and be, in all cases, adhered to, although the greatest frauds may thereby be perpetrated under the fiction as a shield, but modern cases sustained by the best text writers confine the fiction to the purposes for

which it was adopted—convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transactions." Kildare-Schubert Apartments Corporation, as is true of all purchasers at sales, became a party to the proceeding when it bid the property in. It became subject to the jurisdiction of the court to the extent that its bid could have been enforced in a summary proceeding. (*Fienhold v. Babcock,* 275 Ill. 282.) In *Chandler v. Morey,* 195 Ill. 596, the court in describing the position of a bidder at a judicial sale, said:

" 'By bidding he subjects himself to the jurisdiction of the Court, and, in effect, becomes a party to the proceeding in which the sale is made, and may be compelled to complete his purchase by the process of the Court.' " Appellees admit that the corporation was not an actual party to the cause at the time of the sale, and that it could not subsequently be made a party *nunc pro tunc* as of the date of the sale so as to affect any of the vested rights and obligations of the parties. Its position as purchaser at the sale is to be determined on the basis of its status at that time, and the fact that it subsequently became an actual party to the proceeding has no bearing on that question. One of the cases called to our attention is that of *Ure v. Ure,* 223 Ill. 454, in which case the court said:

"Innocent third parties have a right to rely upon a judgment or decree of a court having jurisdiction to pronounce it. They are not required to look beyond the question of jurisdiction, and if the decree is one which the court has jurisdiction to render both as to the subject matter and the parties, innocent purchasers acting in good faith will be protected, notwithstanding the subsequent reversal of the decree or

judgment.'' That the opinion in the *Ure* case is still adhered to appears from the opinion in *Arnold v. Arnold,* 325 Ill. 500, in which later case the court repeated and emphasized the fact that third party purchasers, in order to take free and clear of defects in the proceedings, and in order to acquire rights which will be unaffected by a subsequent reversal or modification of the decree or judgment, pursuant to which the sale is had, must be innocent purchasers who buy in good faith and in reliance alone upon the decree.

It appears that a hearing was had for the purpose of determining whether or not the corporation, at the time of the sale, in fact occupied the position of a stranger to the proceeding—an innocent, good-faith purchaser without notice, as it were—and from the evidence adduced at that hearing, the chancellor quite properly concluded and found that the corporation was not a stranger to the proceeding and did not occupy the position of an innocent, good-faith purchaser, without notice or knowledge. The hearing was not for the purpose of changing the status of the corporation as appellant seems to believe but was rather for the purpose of determining what that status was. Under all the circumstances of this case, the corporation was as fully bound by the subsequent reversal and modification of the decree as the parties themselves. It cannot, under any circumstances, occupy the position of an innocent purchaser relying in good faith upon the decree merely, without notice or knowledge of defects in the proceedings itself. As we understand the purpose of this incorporation, it was to enable the thirty-two unpaid noteholders to unify their scattered rights so as to act as a unit in the protection of their interests in the purchase and subsequent reorganization of the real estate. The individual unpaid noteholders, holding as they did, unit notes of as small a denomination as $100, were required to form some character of unit organization in order to pool their meager individual

interests, so as to make a unit bid at the sale. The usual practice in this regard is either to form a bond-holder's committee or a corporation, but it cannot be said that a corporation so organized occupies the position of an innocent, good-faith purchaser without notice or knowledge. When we further consider that the corporation, in making good its bid, used the unpaid mortgage notes which the noteholders had assigned to it; that such use of the unpaid notes by the corporation was contemplated by and expressly authorized in the decree of foreclosure; and that no other consideration was ever paid; it would, therefore, appear that the corporation, which sought to use the very subject matter of the action in the payment of its bid at the judicial sale, cannot occupy the position of an innocent, good-faith purchaser without notice. We are of the opinion that the chancellor was correct in refusing to hold as urged by appellant that the corporation was in the same position as an innocent, good-faith, third party purchaser for value, without notice. Appellant's counsel quotes in full section 32 (a) of the Judgments, Decrees and Executions Act (Ill. Rev. Stat. 1937, ch. 77, sec. 35 (a) [Jones Ill. Stats. Ann. 107.185]), but it would appear that the term "purchaser" employed in that section has uniformly been interpreted to mean an innocent, goodfaith purchaser, without notice or knowledge.

The further suggestion is offered by appellees that where a purchaser at a foreclosure sale is either an unpaid noteholder or a person or corporation so connected with a cause as virtually to be in the position of a noteholding party to the proceeding, or to occupy a position other than that of an innocent purchaser in good faith without notice, such purchaser is bound by all proceedings in the case; and that, when on appeal the decree of foreclosure, pursuant to which the sale is had, is reversed because of the inclusion of certain usurious items in the mortgage debt and the case is

remanded to enter a decree in accordance with the view expressed in the opinion of the reviewing court, the chancellor may vacate the master's sale and the order approving the sale, and direct a new sale to be held. Appellant's position appears to be that once the chancellor has approved a sale, he no longer has any discretion or right to vacate that sale. None of the authorities relied upon in her brief support her position; in fact the cases indicate the contrary, and are to the effect that the chancellor does have such discretion, but that the party moving to set aside the sale must present a proper basis for invoking the discretion.

The action of the chancellor—as suggested in appellee's brief—fully complied with the mandate of the Supreme Court. The mandate was that "For error in denying the claim as to usury, the decree is reversed and the cause is remanded to the Superior Court, with directions to enter a decree in conformity with the views herein expressed." It will be noted from the mandate that the decree of the superior court was *reversed* and not merely *modified* or *affirmed in part.* The superior court was directed to enter an entirely new decree, and the only limit on its powers was that the new decree should be in conformity with the views expressed in the opinion of the Supreme Court. It is apparent from the expression of the mandate that the *nisi prius* court was to conform its actions to the directions given in the mandate and to enter a decree in accordance with the views expressed in the opinion. (*People v. DeYoung,* 298 Ill. 380; *Roggenbuck v. Breuhaus,* 330 Ill. 294.) An order approving a sale, as in the case at bar, where the purchaser is not in the position of an innocent good-faith purchaser for value without notice, and where no distribution has been made and the certificate of sale has not been delivered, is not a final appealable order within the meaning of the Civil Practice Act. Such a sale and the order ap-

proving the same has a direct relation to the foreclosure decree itself, and while the reversal of the decree of foreclosure does not *ipso facto* vacate the sale, it has such a direct and immediate connection therewith that the chancellor, upon reversal or modification of the decree may quite properly order the sale vacated. We believe that the chancellor was well within the principles of the decided cases.

It is further contended by appellees that upon reversal of the decree the parties are to be restored to their original rights so far as it can be done without prejudice to third persons, and that the court should consider the equities of both parties in determining the question of whether or not the foreclosure sale should be set aside. It is suggested that applying these principles to the case at bar, it is clear that the action of the chancellor in setting aside the mortgage sale constitutes a reasonable exercise on his part of his judicial discretion. The amount bid ($17,000) at the mortgage sale was predicated upon the unpaid notes, and, as suggested by appellees, the bid was not and was never intended to be, and none of the parties, including appellant, ever contemplated that it was to be a cash bid. Appellees submit that it would have been grossly unfair, unjust and inequitable for the chancellor to have refused to set aside the sale upon a bid made under the circumstances and by the particular bidder in this cause after the mortgage debt, upon which reliance was made, was so substantially reduced by the Supreme Court. Counsel for the parties have cited a number of cases, the principles of which we have examined and, applying the theories of these cases, we are satisfied that the chancellor acted properly and in conformity with the expressions of the Supreme Court in reversing the first decree.

In entering the second decree pursuant to the mandate of the Supreme Court, we are of the opinion that the chancellor correctly computed the sums to be de-

ducted from the indebtedness found to be due in the first decree. Appellant repeatedly mentions the figure of $12,313 as the amount which the chancellor should have found to be due after deducting all principal, interest and commission payments from the original indebtedness. Since appellant makes no attempt to break down the lump sum figure which she uses, and since that figure cannot be analyzed on the basis of the defective abstract filed by her, we must take as true the computation of appellees to demonstrate that the indebtedness fixed in the decree now before this court is correctly computed. Appellees' computation is as follows:

```
Original debt ..........................$23,000.00
Deductions:
 Unlawful commission retained by
 Citizens State Bank ........$1,250.00
 Principal paid on notes 1 to 10
 inclusive .................. 1,000.00
 Interest on said notes for 3 years
 at 6% .................... 180.00
 Principal paid on notes 1 to 20.. 1,000.00
 Interest paid on said notes for 4
 years at 6% ................ 240.00
 Interest on $21,000 for 5 years at
 6% ........................ 6,300.00
 Interest at 5% on $20,400 (per
 extension agreement) for a
 period of 6 months .......... 510.00
 Paid on account of interest...... 77.00
 Total of Deductions ............. 10,557.00
Balance of principal due ...............$12,443.00
```

At least one error in the figure of $12,313 urged by appellant consists of the fact that she included in her computation a $30 payment alleged to have been made to the cross plaintiff, John C. Taylor, but which both

decrees find was never received by him. There is to be added to the principal indebtedness due, the total of costs, expenses and attorneys' fees paid by appellees, aggregating $1,735.05, and the master's costs of $245.65, making a total indebtedness due appellees of $14,423.70, which is the amount of the indebtedness fixed in the decree from which appellant appeals. The sum of $14.423.70 does not include the sum which will be due the master for commission and other expenses incident to a sale.

Having passed upon the matters of importance in this appeal, we are of the opinion that as to the merits of the cause, the chancellor fully complied with the mandate of the Supreme Court in entering the decree of July 6, 1938, and that the decree should be affirmed. Having reached this conclusion, the order of the court will be that the decree entered on the date last mentioned is affirmed.

*Decree affirmed.*

BURKE, P. J., and KILEY, J., concur.