## JAMES L. ESTES

### *v.*

## THOMAS FURLONG.

1. BILL FOR SPECIFIC PERFORMANCE—*contract to sell land.* Where one party agrees to sell another a piece of land, at a stipulated price per acre, on which a sum of money is paid, and the vendor gives to the vendee thirty days preference to buy, one half of the price down and the balance payable within one year, with eight per cent interest, and, in addition thereto,

to pay a fair valuation for the dwelling house and stables on the premises, at the time the purchaser should want possession, which he could have at any time within sixty days after the first payment, and the written offer to thus sell was executed and delivered to the purchaser: *Held*, that the payment, when the written offer to sell was executed, was a payment on the purchase.

2. That this writing was sufficiently clear and explicit in its terms to constitute, when accepted, a binding agreement to sell the land.

3. CONDEMNATION OF THE LAND FOR PARK PURPOSES—*no change in the rights of parties.* Notwithstanding a law was passed four days after the agreement, authorizing commissioners to condemn lands for park purposes, and after the bill was filed for a specific performance of the agreement, the land was so condemned, and valued at double the price at which the offer was made to sell, and as the purchaser elected to take the land, and had tendered the money, and by agreement the appraisement put on the house and stabling by the commissioners was stipulated to be taken for the purposes of the suit, and their value paid to the owner, and they conveyed to the commissioners, and $5100 of the condemnation money was also paid to him, and $4900, the residue, it was agreed should abide the event of the litigation: *Held*, that these transactions did not affect the rights of the purchaser.

4. CONTRACT—*unilateral.* When a contract is in anywise unilateral, the court will regard any delay on the part of the purchaser with especial strictness, and will exercise its discretion with great care, but an agreement of the character of that in this case will not be regarded as invalid, or as one which will not be enforced. And the payment of the $300 when the agreement was executed formed a sufficient consideration to support the contract, and the prompt tender of the money was the exercise of the right of election. A party who has not signed a contract for the sale of land may enforce it against one who has, although he could not be compelled to perform it; the want of mutuality may be waived by filing a bill to enforce it, and thus the remedy became mutual.

5. SAME—*valuation of property.* Where a contract to sell property stipulates that there should be a fair valuation of a portion of the same, it is implied that it is to be at a reasonable estimate made by the parties, or if they are unable to agree, then to be determined by the court. In such a case the specification of the mode of ascertainment is not an essential ingredient of the contract, but is entirely subsidiary. When, in such a case, no means of ascertaining the value of property thus sold is pointed out, any means adapted to the purpose may be employed.

6. SALE—*specific performance.* A contract to sell at a fair price, or a fair valuation, will be enforced in equity, when it is sufficiently certain, fair in all its parts, for an adequate consideration, and is capable of being performed.

7. CONTRACT—*its execution by an illiterate person.* Where a party can not read writing, but his wife is a fair scholar, and they examine the agreement, and it was fairly explained to him by the purchaser, and there was no fraud or misrepresentation, it would be a dangerous precedent to permit such an instrument to be defeated on loose and indefinite testimony of the maker that it was not the same, when read on the trial, as when he executed it.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. SIDNEY SMITH and Mr. J. A. OWEN, for the appellant.

Mr. HENRY S. MONROE, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This bill was filed to enforce specific performance of the following agreement:

"Memorandum between Thomas Furlong and James L. Estes. For the consideration of $300, in hand paid, the said Furlong gives the said James L. Estes thirty days preference to buy the tract of land where he lives, being the same conveyed to him by D. McIlroy, situated in west half southwest quarter, section 1, township 39, range 13 east, in Cook county, Ill., supposed to be about six acres, more or less, at the rate of $1000 an acre, or per acre, one half down, balance on or before one year, with eight per cent interest, and in addition thereto a fair valuation price for the frame dwelling and the stabling, at the time said Estes wants possession, which he may have at any time within sixty days after the first half payment is made. Witness our hands, by said Thomas Furlong and his wife, this 3d of February, 1869.

> "THOMAS FURLONG.    [Seal.]
> "CATHARINE FURLONG.    [Seal.]"

The bill sets up that the payment of $300 was to be a part of the purchase money, and this is plainly inferable from the testimony. The answers of Furlong to questions, as to the

intention of this payment, display such an attempt at evasion, that they may properly be considered rather as confirmatory, than a denial, of the allegation of the bill.

The agreement was to sell the land conveyed to Furlong by McIlroy. The description in this deed, including one half of the street on the west side of the lot, shows that the area of the lot, including the half of the street, was less than five and a half acres. In the absence of proof, we infer from the plat that the road south of the lot was a public highway prior to the survey.

On the fourth day after the execution of the agreement, a law was passed to enable commissioners to condemn land for park purposes, and between the filing and dismissal of the bill upon a final hearing, the land in controversy was condemned as a part of Humboldt Park. The land was estimated at $2000 per acre, and the buildings at $500.

After the condemnation of the land, and before the hearing of the bill, the parties agreed to, and did, convey to the commissioners the land in dispute. A stipulation in writing was then made by the parties, and filed in the cause, that the $500 allowed for the improvements should be paid to Furlong, and received by him as the value of the buildings, for the purposes of the suit, and as the sum which was to be paid to him under the contract, and that $5100 of the condemnation money should be forthwith paid to Furlong, and $4900, the residue, should be deposited in bank until the termination of all litigation between the parties with reference to the land or money, and that the money should be paid to the party entitled thereto by the final decree, unless there was a further prosecution of the suit, by appeal or otherwise.

The concluding portion of the stipulation was as follows: "It being the true intent of this agreement to substitute said money for the land, and that the further prosecution of litigation is to determine to whom said money shall be awarded, in place of said land."

A supplemental bill was filed, setting up the occurrences which intervened between the filing of the original and supplemental bills.

The objections made to the relief prayed for, are, that the agreement was a mere option or refusal; that there was no certainty as to the amount which was to be paid; no provision as to the manner in which the buildings were to be valued; that the contract is vague and uncertain; and that the parties were not equally matched, so that there could be fairness without oppression.

Where the contract is in anywise unilateral, as in the case of an option to purchase, any delay on the part of the purchaser, in compliance with it, is regarded with especial strictness, for then laches would be more easily fixed upon the vendee, than where the contract was of the ordinary character. The court will, in such case, exercise its discretion with great care, and scan the conduct of a party claiming the benefit of such a contract. But an agreement of this character can not be regarded as invalid, or as one which will not be enforced in equity.

The consideration for the right of election within thirty days, was $300, paid at the time the agreement was executed, and the prompt tender of the money was the exercise of the right of election.

A party, who has not signed an agreement relating to lands, may enforce it against one who has signed it, although he could not himself have been compelled to execute it.

The want of mutuality may be waived by filing a bill, and thus the remedy become mutual. *Farwell* v. *Lowther*, 18 Ill. 252; *Esmay* v. *Gorton*, 18 Ill. 483; Frye on Spe. Perform., p. 200 et seq.; *McCrea* v. *Purmort*, 16 Wend. 460; *Perkins* v. *Hadsell*, 50 Ill. 217; *Sutherland* v. *Briggs*, 1 Hare, 26; *Walker* v. *Ballard*, 3 John. Ca. 532.

The true construction of this contract is, that the purchaser should, for the period of thirty days, have the right to purchase the land at the agreed price of $1000 per acre. The

quantity of land is fixed definitely by reference to the McIlroy deed. The time of payment is also certain. One half of the stipulated value of the land was to be paid within thirty days, and the balance on or before one year from the date of the agreement. So far, there is no incompleteness, no ambiguity, in the writing.

Possession of the premises was to be given within sixty days after the completion of the first payment, and then a fair price, to be ascertained by valuation, was to be paid for the improvements.

On the first day of March, and before the expiration of the thirty days, the purchaser tendered $2750, including the cash payment of $300. This was a complete tender, according to the contract. It was one half of the value of five and one half acres; and, as we have heretofore remarked, this was more than the quantity of land sold.

The only reason assigned for the refusal of the tender was, that the price of the dwelling and stable had not been estimated. As we construe the contract, the payment for the buildings was not then required.

The purchaser, however, apparently desirous to accommodate, on the next day obtained the services of a builder, and, with the consent of Furlong, had the improvements valued, and offered to pay the amount of the valuation. He even was willing to pay for them $600, but was met with a prompt refusal, and a demand for $1000.

Afterwards, and before the expiration of sixty days from the tender in March, the purchaser made a tender of $6400, and demanded a deed. This sum was more than the vendor was entitled to, in any view of the agreement between the parties.

The proof shows that the improvements were not worth more than $400, and by stipulation entered into during the progress of the cause, the vendor received $500, as the amount which the purchaser was to pay for them, under the contract.

The contract provided that there should be a fair valuation of the dwelling and stable. This implied a reasonable estimate,

to be made by the parties; or, if they could not agree, to be determined by the court upon proof.

The purchaser acted in a reasonable manner, and was willing to abide by a fair valuation. He even incurred the expense of the services of a builder to ascertain the price.

On the contrary, the conduct of the vendor was reprehensible and unreasonable. After having agreed to take a fair valuation, he obstinately assumed a gross sum, as the value, and refused to yield to the opinion or appraisement of other persons.

Here, then, was a substantial contract for the sale of this land, at a fair price. The time of payment is specifically fixed, the quantity of land easily ascertained, and the price thereof determined. The mode of ascertainment of the value of the buildings, though indicated in the agreement, is not definitely settled, and did not become 'an essential ingredient in the contract. It is entirely subsidiary.

The purchaser did everything which was required of him. He tendered in apt time a fair price, which was refused.

Upon a bill filed for specific performance, under such circumstances, the court must determine the value upon proof. *Parkhurst* v. *Van Cortlandt*, 14 Johns. 15.

In *Milnes* v. *Gery*, 14 Ves. 401, it is said that, an agreement to sell at a fair valuation may be executed, and that where no particular means are pointed out, to ascertain the value, any means adapted to the purpose may be used by the court.

Specific performance of a contract, to sell at a fair price or fair valuation, will be enforced. *Van Doren* v. *Robinson*, 1 Green Eq. R. N. J. 256 ; Frye on Spec. Perf. sec. 219.

But this whole matter was settled, in this case, by the written stipulation of the parties. By it the vendor agreed that $500, which he received, "shall be considered as the value of the buildings, for the purpose of said suit, and the sum which said Estes was to pay for them, under his contract."

The vendor should be estopped from any further question of the completeness of the contract. If it was vague and

uncertain before, he has waived all difficulty by this stipulation. He has made certain that which he claimed to be uncertain.

The contract, then, was sufficiently certain, was fair in all its parts, was for an adequate consideration, and was capable of being performed.

Was there any fraud or imposition practiced? Was there unfairness, or misrepresentation, or misapprehension?

It is strongly urged that one party was a shrewd speculator, and the other an illiterate man, and therefore they were not equally matched.

It is also insisted that, as the purchaser knew that the "Park Bill" would become a law, and thus the value of the land would be greatly enhanced, it would be inequitable to enforce specific performance.

There is no proof of unfairness or misrepresentation, or concealment of facts, on the part of the purchaser.

It is true, that Furlong could not read writing, but his wife was a fair scholar. She and her husband took the contract, after it was written, into another room and examined it. They then returned to Estes, and he explained it to them. The wife then executed it, in the presence of her husband, by signing his name, as well as her own.

Furlong testified that the contract, as produced on the hearing, was different from the one read to him by Estes. His testimony is, however, rather unintelligible, and his answers, upon cross-examination, evasive.

It would be an unsafe and dangerous precedent, if a written contract is to be defeated by such evidence.

Estes admitted that he believed, before the purchase, that the Park law would be enacted. He also stated that he and Furlong talked about it, and the latter assigned the passage of the law as a reason why his land was then worth $1000 per acre.

We think that there was a full and intelligent consent to this contract, and that there was nothing hard and unconscionable about it.

The vendor was ignorant, but, in the eye of the law, he was capable of making a binding contract, without his solicitor at his elbow.

The land has risen suddenly in value, but each party had knowledge of the probable cause of increase, before the consummation of the trade.

We are of opinion that specific performance of the contract should be enforced, and that appellant is entitled to the relief prayed for in the supplemental bill, and provided for in the written stipulation.

The decree is reversed and the cause remanded.

*Decree reversed.*