ED ZELLEKEN *et al.*, as Partners, etc., V. S. L. LYNCH *et al.*, as Partners, etc.

No. 16,157.

SYLLABUS BY THE COURT.

1. MINERAL LEASES — *Covenant to Work and Mine "Continuously."* In the absence of provisions indicating a contrary intention a covenant in a mining lease that the lessee shall work and mine the property continuously means continuously to the end of the term.

2. ———— *Oral Agreement—Specific Performance—Mutuality of Obligation and Remedy.* The owner of mining lots made an oral agreement to lease them for a long term of years, the lessee to work and mine the lots continuously, in good faith and in a miner-like manner. The lessee was put in possession and for three years carried out in good faith the terms of the contract. Meantime the lessee installed machinery, erected improvements, sunk shafts, ran drifts and otherwise developed the property until it became very valuable, and in so doing expended the sum of $30,000. After repeated demands the lessor refused to execute a lease for the agreed period. *Held,* that as against a claim of want of mutuality in the obligation and remedy of the parties specific performance of the oral agreement should be decreed.

Error from Cherokee district court; S. C. WESTCOTT, judge *pro tem.* Opinion filed October 9, 1909. Affirmed.

*William F. Sapp,* and *Andrew S. Wilson,* for the plaintiffs in error.

*Edward E. Sapp,* and *S. E. Cheeseman,* for the defendants in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs, Lynch & Co., brought an action against the defendants, the Dillon company, to compel the performance of an oral agreement to make a lease of mineral land for mining purposes, and was successful. A demurrer to the petition was overruled, and it is claimed here that the petition states no cause of action for specific performance because of a lack of mutuality in the obligation and remedy of the parties.

The petition charges that in consideration of the payment of a certain royalty on the ore to be mined the defendants agreed to make a lease of the land in controversy for a term of years ending in January, 1914, the plaintiffs to work and mine the lots continuously, in good faith and in a miner-like manner; that the plaintiffs went into immediate possession of the lots and have occupied them continuously for a period of more than three years—to the time of filing the petition; that ever since taking possession the plaintiffs have mined the lots and in all other respects carried out in good faith the terms of the contract; that the plaintiffs have installed machinery, erected improvements, sunk shafts, run drifts and otherwise developed the property until it has become very valuable, and in so doing have expended the sum of $30,000; that the defendants dispute the terms of the agreement and refuse, after repeated demands, to execute a lease for longer than one year; and that the plaintiffs have no adequate remedy at law and will suffer irreparable injury unless the oral agreement be specifically enforced.

The defendants say the contract pleaded does not bind the plaintiffs to mine the property to the end of the term; that the plaintiffs are at liberty to discontinue

operations and abandon the lease at any time; and that a court of equity will not compel specific performance in a case where, because of a want of mutuality in obligation, the party seeking the relief may render the decree nugatory by the exercise of a discretion which he rightfully possesses. The principle invoked is one of extensive application, but the defendants misinterpret the contract. It is well understood that whatever is necessarily implied by the words used in a contract is as much a part of the contract as if it had been expressed in elaborate terms. The covenant to mine the lots continuously can have but one rational meaning, and that is: continuously to the end of the term. The implication is as clear and certain as if the expanding phrase had been expressly inserted. Besides this, correlative obligation sufficient to sustain specific performance may be implied from the situation of the parties and the circumstances surrounding the execution of the contract. (*Wilbourn v. Bishop,* 62 Miss. 341.) The judgment which has been rendered requires the written lease to provide in terms that the plaintiff shall work and mine the lots continuously during the life of the lease. Supported as it is by both the language employed and the evidence produced at the trial this interpretation of the contract is manifestly the true one, and no prejudice resulted to the defendants by founding judgment upon it.

The defendants say the remedies of the parties were not, when the oral agreement was made, and are not now, mutual, and hence that specific performance could not rightfully be decreed. Formerly it was said that mutuality of obligation and of remedy must have existed at the time the agreement was concluded to make specific performance available, and some courts still adhere inflexibly to that rule. Many courts, however, have recognized the injustice of denying specific performance if the situation of the parties be such that reciprocity exists at the time the remedy is invoked,

Zelleken v. Lynch.

and exceptions have been made until the exceptional doctrine has largely superseded the rule. Also, it was formerly said, and in some quarters is still maintained, that mutuality requires identity of remedy, and that both parties must be entitled to specific performance before a court of equity will proceed at the suit of either, but so many modifications of this rule have been found to be necessary to meet the demands of practical justice that it has gone the way of its companion. In a note at page 237 of the second edition of Pomeroy on the Specific Performance of Contracts it is said:

"I think it very clear that the rule was applied with much more strictness and severity in the older than in the later decisions; indeed, the rule, so far as it relates to the mutuality of the remedy alone, is evidently based upon no principles of abstract right and justice, but, at most, upon notions of expediency; and the arguments in its support are often mere repetitions of time-honored verbal formulas, which, when closely analyzed, are found to have little or no real force and meaning."

This court is committed to the liberal view.

"The doctrine that there must be mutuality in the contract, and that it must be capable of enforcement at the suit of either party at the time it is entered into, so broadly contended for by counsel for the plaintiff in error, and stated in equally broad terms in Fry on Specific Performance, § 443, is subject to so many exceptions and such important qualifications that it is doubtful whether a court would ever be warranted in declaring the law so broadly. There are many contracts, originally unilateral, capable of enforcement when accepted. Many other contracts afford one party a remedy by an action for the recovery of money, either upon a specific promise to pay or in an action for damages, while the other party may be entitled to a specific performance; still others, where the remedy of one party before any performance might be very inadequate, which are yet, after full performance on one side, capable of a specific enforcement against the other." (*Water-Supply Co. v. Root*, 56 Kan. 187, 197.)

Take the facts of this case: The defendants put the plaintiffs in possession under the oral agreement. The

plaintiffs are without fault, and show three years of faithful and sincere performance. The plaintiffs greatly enhanced the value of the property by the expenditure of large sums of money in improvements and in developmental work, and have placed themselves in a position to enjoy the very fruits of the contract which were in the contemplation of the parties when it was made. The parties appear to have been competent, there is nothing to indicate that the contract was not fairly concluded, and it seems to be reasonable and just in all its provisions. There is no way to estimate money damages which would adequately compensate the plaintiffs should they be compelled to vacate the premises. If equity has no remedy to prevent the defendants from confiscating to their own use this increment to the value of their land, from compelling the plaintiffs to sacrifice their expenditure of time and labor and money, and from cutting off the plaintiffs from the just profits of the venture, it is a very anemic system and needs to be recruited with a stock of robust, virile principles which will enable it to cope with fraud. Whatever the situation of the parties may have been at the beginning is of no consequence now. Their affairs have reached a stage where the plaintiffs' claims appeal to conscience and are unopposed by any countervailing equity on the defendants' side. The plaintiffs are not within the principle which denies specific performance to one who may, under the law or under the contract, decline to perform on his part the moment the decree is entered. They can not rightfully refuse to fulfil their agreement. Should a wrongful refusal occur the defendants would be entitled to redress, and doubtless either the law or equity would provide them a remedy. It may be that some form of injunction relief to prevent a breach of the contract would be awarded, or it may be that reparation in damages could be made. But the court has no occasion to anticipate culpable conduct on the plaintiffs' part and speculate upon how the defend-

ants might protect themselves should they some time need protection. It may be assumed that the plaintiffs will obey the law and keep their promise. Manifestly it is just and equitable and will thwart a fraud now to decree specific performance in the plaintiffs' favor, and manifestly it would be unjust and inequitable and would allow the perpetration of a fraud not to do so. That is sufficient. If scientific or other considerations demand a formula governing the subject, whoever needs can phrase one on that basis. So far as the matters just discussed are concerned the petition states a cause of action for the relief sought.

Other objections to the petition are without merit. The oral agreement contemplated a valid lease and not one void under the statute of frauds and perjuries. It was decided long ago by this court that in an action for specific performance the description of the premises involved may be aided by extrinsic evidence. (*Hollis v. Burgess,* 37 Kan. 487; *Bacon v. Leslie,* 50 Kan. 494.)

The substantial dispute between the parties related to the manner in which the royalty the defendants were to receive should be computed. The question was, Did the defendants make the agreement alleged in the petition? This question was one of fact, and was fully tried, the evidence of course being conflicting. A jury returned specific findings of fact sustaining the plaintiffs' contention. The court itself then made findings of fact of the same character as those returned by the jury. These findings are supported by sufficient evidence, and there the controversy over the facts ends so far as this court is concerned. It is not necessary to take up seriatim the assignments of error which seek to avoid the force of the findings of fact.

Certain mining rules and regulations of the defendant company were introduced in evidence. Some of them related to matters consistent with the plaintiffs' version of the contract, and the court held them to be included in the lease. Others relating to the chief sub-

.ject of controversy were held not to be incorporated. The defendants say the contract must have included ·everything in these rules or nothing. Manifestly this is not true. The position of the court evidently was that · nothing in the rules contrary to the express agreement of the parties could stand, which is true, but that the plaintiffs should be held to have assented to the other rules, either because the plaintiffs were chargeable with notice of reasonable regulations promulgated under the head lease or because such regulations were according to the custom of the district. All the rules and regulations which the court held to be included in the contract imposed restrictions upon the plaintiffs for the defendants' benefit. If they should have been omitted the defendants can not complain, and the plaintiffs do not.

Other claims of error are not sufficiently grave to require comment, and the judgment of the district court is affirmed.