(No. 24118. ▮▮▮▮▮▮)

ROBERT J. WATT *et al.* Appellees, *vs.* CHARLES CECIL *et al.*— (LUCY ROONEY, Appellant.)

*Opinion filed April 15, 1938—Rehearing denied June 8, 1938.*

512

HAROLD O. MULKS, for appellant.

BENNETT & COLBACH, and ALBERT E. JENNER, JR., for appellees.

GILBERT NELSON, (HENRY D. BROWN, of counsel,) for John C. Taylor, cross-appellant.

Mr. JUSTICE JONES delivered the opinion of the court:

The superior court of Cook county entered a decree foreclosing a trust deed in the nature of a mortgage. The trust deed was given to the Citizens State Bank of Chicago, as trustee. A constitutional question brings the cause directly to this court on appeal by Lucy Rooney, one of the owners of the property involved.

Section 1 of "An act to revise the law in relation to banks and banking," adopted by referendum in 1920, (Ill. Rev. Stat. 1937, chap. 16½, par. 1,) authorizes banks to accept and execute trusts. Appellant claims that section is unconstitutional because the power conferred is not embraced or expressed in the title of the act; that the acceptance and execution of trusts do not constitute banking or the exercise of banking powers, and that the legislature was without power to delegate to the people legislation in reference to trusts. On this hypothesis she contends that the Citizens State Bank of Chicago had no power to take title to the premises, as trustee, and since it had no such power it could not serve as a conduit of title to its successor

in trust. It is also urged that it was error to enter the decree without first appointing a competent trustee.

While we held in *People* v. *Loewenthal,* 93 Ill. 191, that the business of a trust company does not constitute banking, and in *Wedesweiler* v. *Brundage,* 297 Ill. 228, that acting as a trustee is not within the generally accepted definition of the term "banking," yet there is no holding in either of those cases that banks may not act as trustees, even without enabling statutes, or that their acts as trustee were void. There is no constitutional inhibition against conferring upon banks the power to accept and execute trusts. Therefore, subject to approval by referendum, the legislature had the authority to empower banks to accept and execute trusts. The wisdom of such a measure is for the determination of the legislature and the people.

Conforming to the trend of modern decisions expanding the functions of banking, we said in *Walsh* v. *Stock Yards Trust and Savings Bank,* 345 Ill. 265: "Originally banking power was very limited and consisted of receiving money in exchange for which promissory notes were given, payable to the bearer on demand. (*Auten* v. *United States Nat. Bank,* 174 U. S. 125.) Modern bankers have extended their operations far beyond the original scope of banking powers. Banks frequently act as trustees by appointment of courts or under wills or deeds, and the right of banks in this State to act as such trustees is recognized in *Wedesweiler* v. *Brundage,* 297 Ill. 228."

The constitutional provision concerning the title of an act does not require the title to express all the minor divisions of the general subject to which the act relates, or that the title be an abstract, a synopsis or an index of the contents of the act. (*People* v. *Mueller,* 352 Ill. 124.) All matters may be included in the act which are germane to the title and relate to the same general subject. (*People* v. *Monroe,* 349 Ill. 270; *People* v. *Emmerson,* 333 id. 606.) Conferring authority upon banks to accept and execute trusts

manifestly pertains to the functions of banking as much so as the powers to discount, receive deposits and loan money. The holding in the *Wedesweiler case* that section 15½ of the Banking act, prohibiting natural persons, firms or partnerships from engaging in the business of transmitting money to foreign countries and buying and selling foreign money in this State, was unconstitutional because the subject matter was not germane to or embraced in the title of the act, has no application here. In view of our recent decisions, and the provisions of section 1 of the Banking act, we hold that banks in this State have power to accept and execute trusts, and that such power is sufficiently embraced in the title of the act.

The contention that the acceptance and execution of trusts is not banking or the exercise of banking powers, and that, therefore, the power to legislate in reference to such trusts is vested in the General Assembly and may not be delegated to the people by referendum, is equally untenable. *People* v. *Barnett,* 344 Ill. 62, holding void a statute providing for jury service by women because of an unauthorized referendum, is distinguishable from the case at bar. In that case the power to legislate on the subject was reposed exclusively in the legislature. Section 1 of the Banking act pertains to banks and banking, and, because of the constitutional mandate, was necessarily submitted to the people for approval. It would have been unconstitutional if it had not been so submitted. *Reed* v. *People,* 125 Ill. 592.

The claim that no default existed when the original bill was filed is not supported by the record. The original bill of complaint filed September 7, 1932, recited that the mortgaged premises "are subject to the unpaid general taxes for the year 1930, which are now past due and for prior years." The trust deed contained a covenant to pay all taxes and a breach of that or any other covenant was specifically made a ground for declaring the whole indebtedness due. The master in chancery found that the 1930 general taxes were

unpaid, and the record shows they remained unpaid until 1935 when they were paid by the receiver. On May 25, 1936, the date the second amended and supplemental bill was filed, and later, on January 26, 1937, when the final decree was entered, there was an undisputed default in the payment of principal, interest and taxes.

The court did not err in permitting the holders of three of the notes secured by the trust deed to become parties complainant on September 27, 1934, while the suit was pending. They were interested and had a right to become parties to the proceeding. Ill. Rev. Stat. 1937, chap. 110, par. 149.

Because nearly two years intervened between the date the suit was filed and the securing of service upon all the defendants, it is claimed a discontinuance ensued and the cause abated. The record does not show that appellant made any such claim in the superior court. She filed a general appearance and answer. Her failure to raise the question there amounts to a waiver of the right. *Wells* v. *Mason,* 4 Scam. 84; *Phillips* v. *Hood,* 85 Ill. 450.

Appellant urges that the publication of notice to "unknown owners" was insufficient to acquire jurisdiction over them because more than three years elapsed between the filing of the original bill and the time of publication. The amended and supplemental bill was filed in January, 1936, and publication was had in May, following. This was within reasonable time after the filing of the amended bill. (*Alexander Lumber Co.* v. *Kellerman,* 358 Ill. 207.) Appellant entered her general appearance and cannot now raise the question of jurisdiction over other defendants who are not complaining of the decree and have assigned no error. (*St. George* v. *Bender,* 342 Ill. 296; *Gottschalk* v. *Noyes,* 225 id. 94.) Nor is she in a position to complain of the failure of the chancellor to enter a rule against the other defendants to answer the second amended and supplemental complaint. Appellant was bound to take notice of its filing,

and she and her husband were granted ten days to file an answer. If error resulted to parties who have not joined in the appeal, she cannot take advantage of it on her own behalf. *St. George* v. *Bender, supra.*

The aggregate face value of the notes secured by the trust deed was $23,000. They bore interest at six per cent per annum with maturities ranging from three to five years. Appellant's answer to the amended and supplemental bill and to the second amended and supplemental bill alleged the notes were executed pursuant to an agreement to lend the makers $21,750 at a rate of interest in excess of seven per cent per annum. This would mean that $1250 was charged as a premium. The interest on $23,000 at six per cent for the period, together with the alleged premium of $1250, is larger than the interest on $21,750 loaned at the maximum legal rate of seven per cent for the same time. If the allegations of the answer are true the loan was usurious, and appellant is entitled to have all payments made, whether as principal or interest, deducted from the principal sum actually loaned. *Cobe* v. *Guyer, 237* Ill. 568; *Harris* v. *Bressler, 119* id. 467.

No replication was filed to the answer, and no testimony was heard on the usury issue. Prior to filing of either of appellant's answers, on motion of three of the complainants, an order was entered that the Civil Practice act should apply and govern the case. Section 32 of that act (Ill. Rev. Stat. 1937, chap. 110, par. 156) provides in part: "When new matter by way of defense or counterclaim is pleaded in the answer, a reply shall be filed by the plaintiff." Section 40 (par. 164) provides: "(1) General issues shall not be employed, and every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates. (2) Every allegation, except allegations of damages, not explicitly denied shall be deemed to be admitted, unless the party shall state in his pleading that he has no knowledge thereof sufficient to form

a belief, and shall attach an affidavit of the truth of such statement of want of knowledge, or unless the party has had no opportunity to deny."

Appellees claim that where no replication is filed and the parties consent to a reference to the master in chancery, the answer will not be taken as true, but the replication will be deemed to have been waived. Our attention is called to the fact that under the provisions of sections 28 and 29 of the Chancery act, which were repealed by the Civil Practice act, it was also provided that a failure to file a replication shall cause the answer to be taken as true. It is urged that the provisions of these repealed sections are substantially the same as the provisions of the Civil Practice act, and cases decided under the former act are controlling. In support of that contention appellees cite *Robinson* v. *Miller,* 317 Ill. 501, *Dempsey* v. *Burns,* 281 id. 644, and *Piot* v. *Davis,* 241 id. 434. In each of those cases no replication was filed, but the parties each took testimony on the issues raised in the answer. Under those circumstances it was held that the filing of a replication was waived. But they have no application to the facts here. No testimony was taken upon the issue of usury. In an unbroken sequence from *DeWolf* v. *Long,* 2 Gilm. 679, to *Headen* v. *Cohn,* 292 Ill. 210, this court has repeatedly held that where no replication is filed and the cause is tried upon bill and answer, the answer is taken as true. That is the situation here on the issue of usury. Even under the repealed sections of the Chancery act, it must have been held that the defense of usury in this case was admitted by the failure to file a replication. It cannot be seriously contended that the Civil Practice act, with its more specific requirements, relaxes the rule. Nor can we sustain the contention that appellant, as grantee of the mortgagors, is not entitled to raise the defense of usury. There is no showing that the mortgage was assumed as a part of the purchase price. The mere fact that the deed was, in express terms, subject to

the mortgage, does not preclude appellant from raising that defense. (*Crawford* v. *Nimmons*, 180 Ill. 143; *First Nat. Bank of Atwood* v. *Drew*, 226 id. 622.) The chancellor erred in denying relief on the issue of usury.

The denial of a preference to cross-complainant, John C. Taylor, on the note held by him and for solicitor's fees of $1500, was correct. He held a $500 note in the last series, all of which matured in March, 1933, and constituted the only outstanding notes. There were upwards of thirty of such noteholders. In that month all of them, except Taylor and another, entered into written agreements extending maturity to March, 1936, under representations therein that all holders of unpaid notes had executed like agreements and that all taxes, up to and including 1930, were paid. The agreement provided that if any of the representations were untrue or incorrect, the notes would become due and payable immediately. The representations were untrue. When the final decree was entered in January, 1937, there was a default in principal and interest on all the notes and taxes. One installment of interest on the extended notes had been paid in September, 1933. Taylor's interest was in default since September, 1932. The extension agreements did not have the effect of dismissing the suit or bar the right to proceed in case of misrepresentation. The rule is that an act done or contract made under a mistake as to a material fact is voidable and relievable in equity. (10 R. C. L., Equity, 295.) That principle applies here. It would be inequitable to require the parties making the extensions to subordinate their liens in the face of such a material mistake of facts.

For the error in denying the claim as to usury the decree is reversed and the cause is remanded to the superior court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*