(No. 34130.—

JULIUS C. LAEGELER *et al.,* Appellees, *vs.* HELEN M. BARTLETT, Appellant.—(FRED A. GILFORD *vs.* HELEN M. BARTLETT *et al.*)

*Opinion filed January 24, 1957—Rehearing denied March 19, 1957.*

SINGER & SINGER, of Highland Park, for appellant.

480

BEHANNA AND ENGBER, of Highland Park, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, Helen M. Barlett, the owner of a parcel of real property situated in Highland Park, was named as defendant in two successive proceedings filed in the circuit court of Lake County. By the first, Julius C. Laegeler and Lester Laegeler, as trustees, sought to compel specific performance of a contract for the sale of said property; by the second Fred A. Gilford, individually and as trustee, prayed foreclosure of two junior mortgages secured by the same property. During the course of the latter proceeding Gilford's interests were assigned to one Samuel Levitt, who was substituted as party plaintiff therein. By a counterclaim filed in the latter action the foreclosure of a first mortgage was also put in issue. The causes were tried separately, then consolidated just prior to the decree from which this appeal is taken. In such decree the court directed specific performance of the contract, foreclosure of the first mortgage, foreclosure of the two junior mortgages, fixed the rights of the respective parties, and directed distribution of the proceeds from the sale of the land. Appellant has appealed from the portions of the decree relating to the specific performance action and to the foreclosure of the two junior mortgages. Since the branch of the proceeding relating to specific performance of the contract puts the right to a freehold directly in issue, this court has jurisdiction on direct appeal. (*Pope* v. *Speiser,* 7 Ill.2d 231; *Livingston* v. *Meyers,* 6 Ill.2d 325.) The appellees in the specific performance action have filed their appearance and brief in this court; the plaintiff in the junior mortgage proceeding has done neither.

Facts pertinent to appellant's first contention, which is directed to the specific performance action, show that the

contract, dated February 1, 1946, was signed by appellant as seller, and by the buyers, Julius C. Laegeler and Lester Laegeler, who are described in the body of the instrument as "Trustees." The contract makes no reference to the trust for which the vendee signators were acting, nor does the contract or the proof reflect any written authorization to the said trustees to bind the trust in such matter. On the basis of such facts appellant argues that the contract is unenforcible, first, because there is a lack of mutuality of obligation and, second, because it violates section 2 of the Statute of Frauds. (Ill. Rev. Stat. 1945, chap. 59, par. 2.) Stated differently, it is appellant's contention that if the present positions of the parties were reversed, the trust could escape liability under the contract by defending on the ground that the trustees did not sign in its behalf, or that they had signed without written authorization to bind the trust.

The only authority advanced in support of appellant's position is *Wloczewski* v. *Koslowski,* 395 Ill. 402. When the facts of that case are analyzed, however, we do not find it to be either controlling or persuasive. There an undisclosed principal, who was not a signator and to whom there had never been an assignment, sought to compel specific performance by the sellers of a contract for the purchase of real estate which a purported agent had signed without written authorization to bind the principal. Under such facts, where the plaintiff had neither signed the contract nor bound himself to the authority of his purported agent, it was concluded there was a lack of mutuality of obligation which required a denial of specific performance. The facts of the present case are materially different. Here the persons seeking specific performance of the contract are both parties and signators to the instrument and openly dealt with appellant in their capacity as trustees. Under a somewhat analogous situation in *Mackie* v. *Schoenstadt,* 307 Ill. 398, where a purchaser signed a contract "Herman

Schoenstadt and Sons," the court held there was no lack of mutuality of obligation even though the proof showed no such partnership existed. In reaching such result the court remarked (p. 407) : "Appellee bound herself to sell the property at an agreed price under the terms of the agreement, and who comprised or was meant by 'Herman Schoenstadt & Sons' was a matter possible to be shown or proven without any great effort." The same is true in the present case. The appellant dealt with the sellers as trustees and were their positions now reversed the identity of the trust could easily be established. Even if this were not so, any claim to lack of mutuality of obligation must disappear in face of the decisions which establish that if a trustee makes a contract in his own name for the benefit of the trust, he is liable on it personally and not in his representative capacity, whether he describes himself as trustee or not. *Equitable Trust Co. of Chicago* v. *Taylor,* 330 Ill. 42, 46, 47; *Wahl* v. *Schmidt,* 307 Ill. 331, 341; *Bradner Smith & Co.* v. *Williams,* 178 Ill. 420.

The decisions last cited would also make it appear that an authorization to a trustee in writing is not necessary to take his contracts out of the Statute of Frauds. Be that as it may, it has been held in a long line of decisions both before and after the leading case of *Ullsperger* v. *Meyer,* 217 Ill. 262, that the statute is satisfied if the memorandum or contract is signed by the party sought to be charged with performance of the contract. Here the contract was signed by appellant, the party charged, and, as pointed out in the *Ullsperger case* (p. 269), the act of appellees in filing their bill for specific performance bound them and rendered the contract mutual. It is to be concluded, therefore, that the contract does not lack for mutuality of obligation and that it does not violate the Statute of Frauds. Cf. *Lipkin* v. *Koren,* 392 Ill. 400.

During the course of the proceeding the evidence disclosed appellant was not the sole owner of the entire parcel

agreed to be sold. She did own 139 feet thereof but owned only an undivided 1/12 in the remaining 23 feet of the parcel. Appellees filed an amended complaint to conform to the proof and the court thereafter confined its decree of specific performance to the land of which appellant was the sole owner and abated the purchase price accordingly. Appellant argues briefly and ineffectively that the failure of the owners of the remaining 11/12 interest to sign the contract creates a lack of mutuality which renders the contract unenforcible against anyone. The position adopted overlooks the established rule of equity that if a vendor has any title to the property he has contracted to convey, the vendee, at his option may enforce the contract with respect to whatever interest the vendor possesses, and the vendor will not be permitted to defend on the ground his title is not so complete as the one he agreed to convey. (*Cities Service Oil Co.* v. *Viering*, 404 Ill. 538; *Baker* v. *Puffer*, 299 Ill. 486; *Moore* v. *Gariglietti*, 228 Ill. 143; 49 Am. Jur., Specific Performance, sec. 102.) The application of such a rule, and the equitable considerations from which it stems, dispel completely the contention that a vendor's lack of a complete title renders a contract void for lack of mutuality.

The next points of argument center around contractual provisions, which read as follows:

"Within a reasonable time to clear title, seller shall deliver to buyer or his agent (which delivery may be made at office of Guy Viti, Highwood, Illinois,) as evidence of title covering date hereof, showing record title in seller (or grantor).

"(2) Owners Guarantee Policy of Illinois Title Company in the amount of the purchase price or its customary preliminary report on title subject to the usual objections contained in such policies, though, if such report be furnished, seller shall deliver such guarantee policy when deed is delivered, but seller, on furnishing such report shall not

be in default for failure to furnish policy until ten days after demand therefor by buyer, such policy or report on title to be conclusive evidence of good title subject only to the exceptions therein stated.

"If evidence of title furnished discloses any defect in title except matters to which the sale is subject by the terms hereof seller shall have sixty days, computed from delivery of objections in case of an abstract, and from delivery of evidence of title in any other case, in which to cure all defects to which the sale is not subject. Seller, at his election, may cure all objections to defects in title by delivery of guarantee policy covering such objections such as he might have furnished in the first instance. If such defects in title be not cured within such sixty days buyer may terminate his contract or may at his election, take the title as it then is (with right to deduct from purchase price liens of definite or ascertainable amount) on giving seller notice of such election and tendering performance. If no such notice be given or tender made within ten days after notice to buyer of seller's inability to cure such defects, this contract then shall be null and void. If this contract be terminated except for buyer's default earnest money shall be returned."

Relying upon such decisions as *Stagman* v. *Lasson,* 345 Ill. 482, *Mitchell* v. *White,* 295 Ill. 135, and *Short* v. *Kieffer,* 142 Ill. 258, wherein specific performance was denied to parties who had not themselves complied with all conditions of the contract, appellant urges that the vendees in the present action should also be denied relief. More specifically it is urged that the vendees' failure to tender the purchase price, and their failure to give notice to appellant of their election to take title with defects uncured, bars them from relief. The vendees, for their part, point out that the complant herein pleads their readiness, willingness and ability to perform on command and urge, first, that actual tender of the purchaser price became un-

necessary as a useless act in the face of appellant's attitude of repudiation, (*Brubaker* v. *Hatjimanolis,* 404 Ill. 342; *Macy* v. *Brown,* 326 Ill. 556,) and second, that the election to take title as it stood likewise became unnecessary and impossible to fulfill due to appellant's failure to comply with the conditions precedent of notifying the vendees both of the defects in title and of her inability to cure them. Cf. *Mishelsky* v. *Carman,* 320 Ill. 123; *Ebert* v. *Arends,* 190 Ill. 221; *Brown* v. *Jurczak,* 397 Ill. 532.

Inasmuch as the positions adopted by both parties have a firm foundation in the law of specific performance, the resolution of the conflict between them must necessarily depend on the proof reflected by the record. Such proof, in turn, is to be considered in the light of the rule that the main question in a case for specific performance is whether the complainant made a conscientious effort to comply honestly with the contract. (*Macy* v. *Brown,* 326 Ill. 556; *Ebert* v. *Arends,* 190 Ill. 221; *Kimball* v. *Tooke,* 70 Ill. 553.) Recourse to the record shows that during the years 1940 through 1945 appellant had discussions and verbal agreements with Guy Viti, a real-estate broker, concerning the sale of her property and that in January, 1946, she entered into a written agreement listing the property with him for sale at a price of $15,000. Shortly thereafter Viti contacted the Laegelers, who owned adjoining property, and as a result of his negotiations, during which he represented both parties, the contract of February 1, 1946, here in controversy, was entered into and signed by the respective parties. By its terms a purchase price of $15,000 was agreed upon, the vendees paid $1500 earnest money which was held in escrow by Viti, and title provisions were agreed upon as previously set forth. Viti then set about to procure an owner's guarantee policy on the premises, and within two or three weeks received a preliminary report of title, paid for by appellant, which noted material but not incurable objections to appellant's title. As a result of

further efforts on the broker's part some of the objections were waived.

It is to be gathered from the testimony of both Viti and the appellant that the matter of clearing up the objections was discussed by them, with appellant adopting the attitude that if it was going to cost a lot of money, so that she would not realize a full $15,000 from the sale, she was unwilling to go through with the deal. Viti suggested the vendees might contribute to the expense of clearing the title and, upon his solicitation, it appears they did offer to pay $200 for such purpose. There is no showing the offer was accepted. During the period in question the vendees were not furnished a copy of the title opinion or advised of the nature of the title defects. Neither were they given notice of appellant's inability to cure defects in title. Similarly, the vendees did not give to appellant notice of election to take title as it was or tender performance. Any uncertainty about appellant's position was removed on March 25, 1946, when, by Viti's version, she informed him that she did not want to sell the premises because children and friends had advised her she was not getting enough money. She directed him to return the earnest money, and instructed him not to show the papers in the transaction to anybody as she did not want it known she had agreed to sell at so low a price. While appellant was not sure of the date, she admitted that she withdrew from the deal because she was not getting enough money, and that she directed the return of the earnest money. She denied, however, that she had given Viti any instructions concerning the title report or other papers. Following this conversation Viti attempted to return the earnest money by mailing his check for $1500 but the check was returned within a few days accompanied by a letter from an attorney representing the vendees, stating that his clients were unwilling to cancel the contract and requesting that Viti or appellant furnish the vendees with evidence of title as

required by the provisions of the contract. When this and further demands were ignored, the vendees filed this suit for specific performance.

The inescapable conclusion from the evidence is that appellant repudiated her contract because she became convinced that she could get a higher price than she had agreed upon, and that she now seeks to avoid performance on the basis of technicalities which find no recognition either at law or in equity. The language of the contract makes it clear that the provision relating to notice by the vendees of election to take title is not independent but is, rather, conditioned first, upon the seller's furnishing evidence of title and, second, upon notice by the seller of her inability to cure defects in the title. Neither condition was fulfilled here, thus the notice and tender of performance required of the vendees became useless and unnecessary acts which may not, in equity, bar an action for specific performance. Cf. *Lewis* v. *McCreedy,* 378 Ill. 264; *Mishelsky* v. *Carman,* 320 Ill. 123.

Appellant's next attack is directed to the credibility of the witness Viti and to the contention that the findings of the master and the decree of the chancellor are against the manifest weight of the evidence. From our examination of the portions of the record referred to we find nothing which would cause us to disturb the findings of fact embodied in the decree below, or to further prolong our discussion of the specific performance action. The evidence shows the contract was fairly entered into and understood by the parties, that it was for a valid consideration, and that it was binding upon both parties at the time this suit was brought. The portions of the decree relating to its performance were correct and proper.

The concluding assignment of error advanced by appellant pertains to the portion of the decree foreclosing the two junior mortgages on her property. Relevant facts are that appellant filed a sworn answer to the foreclosure com-

plaint wherein she alleged fraud and usury as affirmative defenses. No reply thereto was filed by the plaintiff. Thereafter, when the cause had been referred to a special master in chancery to hear and report the proofs, appellant offered no proof of her affirmative defenses but took the position that plaintiff's failure to reply was to be deemed an admission of the defenses pleaded, which relieved her of her burden of proof. The master so ruled and, after finding the matters pleaded constituted a defense, recommended the plaintiff's complaint be dismissed. Subsequent objections to the report of the master were overruled. The chancellor, however, sustained exceptions, predicated upon the proof rather than the sufficiency of the answer pleading the defenses, and entered the foreclosure decree.

At this time appellant renews her contention that plaintiff's failure to reply is to be deemed an admission of the defenses affirmatively pleaded in her answer and asks that the portion of the decree foreclosing the two junior mortgages be reversed. The express language of sections 32 and 40(2) of the Civil Practice Act, (Ill. Rev. Stat. 1949, chap. 110, pars. 156 and 164(2),) and the construction placed upon those provisions by the decisions of this court, attest to the substantial correctness of appellant's position. (See *Watt* v. *Cecil,* 368 Ill. 510; *Scham* v. *Besse,* 397 Ill. 309; *Firke* v. *McClure,* 389 Ill. 543; *Village of Palatine* v. *Dahle,* 385 Ill. 621; *Kreicker* v. *Naylor Pipe Co.* 374 Ill. 364.) The rationale of the cited cases is that allegations not specifically denied are to be taken as admitted, and in each case it was held that matters of affirmative defense raised by the defendants in answer to the plaintiffs' complaints were admitted by the failure of the plaintiffs to reply to such matters. It is true that a defendant may waive a failure to reply by introducing evidence to prove his affirmative defense, (*Sottiaux* v. *Bean,* 408 Ill. 25; *Cienki* v. *Rusnak,* 398 Ill. 77,) but the record of this case reflects that the appellant expressly refrained from making

proof of her affirmative defenses. Under such circumstances the filing of a reply was not waived and, even though the cause was referred to a master and the plaintiff permitted to make proof, the affirmative defenses unreplied to must stand as admitted. (Cf. *Watt* v. *Cecil,* 368 Ill. 510.) To hold that proof introduced by the plaintiff would constitute a waiver of a failure to reply would operate to efface the proviso of section 40(2) that "Every allegation * * * not explicitly denied shall be deemed to be admitted." We find that the chancellor erred in sustaining the exceptions to the master's report and in entering the subsequent decree of foreclosure.

For the reasons stated we conclude that the circuit court of Lake County properly directed specific performance of the contract for the sale of appellant's property, and that it was error to direct foreclosure of the junior mortgages. In these respects, therefore, its decree is affirmed in part and reversed in part, and the cause is remanded with directions that a new decree be entered in the consolidated causes in conformity with the views herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*