(No. 34603.—

Rose Gould *et al.*, Appellants, *vs.* Norman W. Stelter *et al.*, Appellees.

*Opinion filed September 18, 1958.*

Daily, C. J., specially concurring.

Kirkland, Fleming, Green, Martin & Ellis, and Charles Pressman, both of Chicago, (Vernon M. Welsh, and Frank L. Winter, of counsel,) for appellants.

William M. Gibbons, Nicholas S. Limperis, John D. DeFeo, and Anthony Scariano, all of Chicago, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

The primary question in this case is the extent to which the doctrine of mutuality of remedy in specific performance cases survives today.

The case is before us on the pleadings. The amended complaint for specific performance contains two counts. Count 1 alleges that Rose Gould, the plaintiff, entered into a written contract whereby she agreed to purchase and Norman W. and Almira Stelter agreed to sell a tract of land for a total consideration of $49,500. Five thousand dollars was to be paid at once, and $9,000 when title was accepted by the purchaser. The balance was to be paid in three annual installments, evidenced and secured by the purchaser's notes and trust deed. Plaintiff paid $14,000 to the agent of the Stelters, but they refused to deliver the deed called for by the contract. The relief requested is that the Stelters be directed to execute a deed in accordance with the contract.

Count 2 adopts the allegations of count 1, and contains additional allegations. Summarized, its additional paragraphs allege: Chris Gregory and the other named defendants are the actual owners of the property, and the Stelters hold title as their nominees. The defendant R. A. Schulze, a real-estate broker, is the agent of the owners. In 1948 Nathan Manilow, also joined as a defendant, executed and delivered to the plaintiff a general power of attorney under which the plaintiff had frequently executed documents in her own name, but on behalf of Manilow. The actual owners of the property had authorized Schulze to sell it, and Schulze negotiated terms of sale satisfactory to Manilow and to the owners. Manilow advised Schulze that the purchaser shown in the contract should be the City National Bank of Chicago, as trustee. The sellers prepared such a contract, dated August 31, 1953, and it was executed by the Stelters.

On September 24, 1953, Schulze brought the contract to Manilow. At Manilow's suggestion the name of the plaintiff was substituted as purchaser instead of the City National Bank of Chicago, as trustee, and the date of the contract was changed to September 24, 1953. Manilow

instructed the plaintiff, in the presence of Schulze, to sign the contract as purchaser, and the plaintiff did so. On many occasions since the contract was signed Manilow had "repeated his acceptance, adoption and ratification of said contract, most recently by filing a counterclaim in this action." The defendants knew that Manilow was principal and that the plaintiff was his agent and attorney in fact. Fourteen thousand dollars has been paid on behalf of Manilow to Schulze, as agent of the actual owners, and Manilow stands ready, as soon as a deed is ready for delivery, to obtain the trust deed called for by the contract. After the contract was executed by the plaintiff and before the owners had refused to convey, Manilow arranged to have the property subdivided and developed for home building purposes, and he has sustained substantial damages because of the delay in performance of the contract.

On information and belief count 2 alleges that the contract was delivered by Schulze to Chris Gregory, one of the actual owners who was acting for himself and the other owners; that Gregory accepted the document and ordered a report of title from the Chicago Title and Trust Company, which was subsequently received and delivered to Schulze; that Schulze advised Manilow that the report showed clear title subject only to stock objections, and Manilow advised Schulze that he was prepared to close the deal. It also alleges on information and belief that the actual owners thereafter received offers from others to purchase the property for amounts greatly in excess of the price provided by the contract, and for that reason they concluded that they had made a bad bargain and have refused to perform.

The relief prayed in count 2 was that the Stelters be directed to execute to the plaintiff or to Manilow the warranty deed called for by the contract; and that judgment be entered against the Stelters and the actual owners in favor of the plaintiff or Manilow in the sum of $100,000

for damages by reason of the defendants' delay in performing the contract; in the alternative, that judgment be entered against Schulze and the actual owners and in favor of the plaintiff or Manilow in the sum of $400,000 for damages arising from the breach of the contract and for punitive damages.

Manilow filed an amended counterclaim which adopted the allegations of count 2 of the amended complaint, and prayed for the same relief.

The Stelters and the actual owners moved to dismisss count 2 of the complaint, and the counterclaim, upon the ground that the power of attorney authorized the plaintiff to contract in Manilow's name, and not in her own name; that Manilow was therefore not bound by the contract, and that because he was not bound there was an absence of mutuality of remedy which precludes recovery. Upon this motion count 2 of the amended complaint, and the amended counterclaim, were dismissed "for want of equity with prejudice." The trial court has certified that there is no just reason for delaying enforcement of the order of dismissal, or appeal from it. (Ill. Rev. Stat. 1957, chap. 110, par. 50.) The plaintiff and Manilow appeal directly to this court. A freehold is involved.

Section 2 of the Statute of Frauds provides that "No action shall be brought to charge any person upon any contract for the sale of lands * * * unless such contract or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." (Ill. Rev. Stat. 1957, chap. 59, par. 2.) In support of the motions to dismiss it is pointed out that Manilow did not sign the contract, and it is urged that the power of attorney that he executed did not authorize the plaintiff to sign contracts in his behalf in her own name. Because Manilow was not bound by the contract from its inception, it is argued that mutuality of

remedy did not exist, and the contract can not be specifically enforced by him. And since Manilow, the principal, has no standing in equity, the plaintiff, as his agent, likewise has no standing.

As we view the case it is unnecessary to determine whether the power of attorney from Manilow authorized the plaintiff to sign the contract in her own name, and we turn at once to the contention that specific performance will not lie unless that remedy was available to both parties at the time the contract was executed. That doctrine, stated by Lord Justice Fry in 1858, was embraced in *Gage* v. *Cummings,* 209 Ill. 120, and there applied to defeat specific performance: " 'A contract to be specifically enforced by the court must be mutual, that is to say, such that it might, at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity, the nature of the contract or any other cause, the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former.' Fry on Specific Performance, sec. 286."

From time to time *Gage* v. *Cummings,* 209 Ill. 120, has been distinguished on extremely narrow grounds. (See *Gibson* v. *Brown,* 214 Ill. 330; *Cohen* v. *Segal,* 253 Ill. 34.) Its underlying basis seems to have been clearly repudiated in *Ullsberger* v. *Meyer,* 217 Ill. 262. Nevertheless, its doctrine has been revived from time to time, most recently in *Wloczewski* v. *Kozlowski,* 395 Ill. 402, upon which the vendors in the present case rely heavily, and in which mutuality of remedy was one of three grounds upon which decision rested. See 15 U. of C. L.R. 143; 17 U. of C. L.R. 409, 415.

Although the doctrine has occasionally been applied to defeat the enforcement of contracts, it has, in Illinois as

elsewhere, been riddled by exceptions. The assignee of the purchaser may enforce performance of the contract. (*Lewis* v. *McCreedy,* 378 Ill. 264; *Espadron* v. *Davis,* 385 Ill. 304.) When the contract has been signed only by the vendor, the act of the purchaser in filing suit for specific performance renders the contract mutual. (*Laegeler* v. *Bartlett,* 10 Ill.2d 478; *Estes* v. *Furlong,* 59 Ill. 298.) The vendor who has no title at the time of the sale, or even at the time of the filing of the bill, may be forced to convey the title that he later acquires. (*Mason* v. *Caldwell,* 5 Gilm. 196, 208.) When a vendor lacks the title that he contracted to convey, specific performance is allowed with a corresponding abatement of the purchase price. (*Kuhn* v. *Eppstein,* 219 Ill. 154.) A contract contingent upon the purchaser's ability to secure a loan may be specifically enforced. (*Kovacs* v. *Krol,* 385 Ill. 593; *Nyder* v. *Champlin,* 401 Ill. 317.) Illustrations could be multiplied of instances in which specific performance has been allowed, although that remedy was not available to both parties when the contract was executed. This enumeration, however, is sufficient to show that the exceptions have cut so deep that no rule in the terms stated by Lord Justice Fry can be said to exist in Illinois.

The defense of lack of mutuality of remedy as enunciated by Lord Justice Fry has been rejected in almost all jurisdictions. (*Epstein* v. *Gluckin,* 233 N.Y. 490, 135 N.E. 861; *Zelleken* v. *Lynch,* 80 Kan. 746, 104 Pac. 563; *Vanzandt* v. *Heilman,* 54 N.M. 97, 214 P.2d 864; see cases collected, 22 A.L.R.2d 508.) Perhaps no doctrine has ever drawn heavier fire from legal scholars. (Ames, Mutuality in Specific Performance, (1903) 3 Col. L. Rev. 1; Cook, The Present Status of the Lack of Mutuality Rule, (1927) 36 Yale L.J. 897; Durfee, Mutuality in Specific Performance, (1921-2) 20 Mich. L. Rev. 289; Langdell, note, (1887-8) 1 Harv. L. Rev. 104; Simpson, 50 Years of American Equity, (1936) 50 Harv. L. Rev. 171; Williston on Con-

tracts, sec. 1433.) It has been rejected by the Restatement. Restatement, Contracts, sec. 373.

"Mutuality" is a loaded word; it has overtones of fairness that tend to obscure what is actually happening. In its actual operation the doctrine of mutuality of remedy makes the effective enforcement of a valid contract in the action presently before the court depend upon the assumed outcome of a non-existent law suit that might have been brought by the present defendant. Moreover, it assumes that in the hypothetical law suit the defense of the Statute of Frauds would be asserted and would prevail. The true situation was stated by Cardozo, J., in *Epstein* v. *Gluckin,* 233 N.Y. 490, 135 N.E. 861, 862, an action for specific performance brought by an assignee of the purchaser, "In such an exercise of jurisdiction there is no risk of hardship or injustice to the vendor. The assignee, by the very act of invoking the aid of equity, assumes the duty of performance, and subjects himself to any conditions of the judgment appropriate thereto. * * * At first the vendor had the obligation of the vendee, and of no one else. The obligation thus imposed has not been lost, but another has been added. Some one has at all times been charged with the duty of performance. The continuity of remedy is unbroken from contract to decree."

We hold that want of mutuality of remedy at the inception of a contract is not a bar to specific performance. "What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or defendant. * * * Mutuality of remedy is important in so far only as its presence is essential to the attainment of that end." (Cardozo, J., in *Epstein* v. *Gluckin,* 233 N.Y. 490, 494, 135 N.E. 861, 862.) *Gage* v. *Cummings,* 209 Ill. 120, is overruled, and *Wloczewski* v. *Kozlowski,* 395 Ill. 402, in so far as it is based upon a supposed want of mutuality, is also overruled. It follows that neither count 2 of the

complaint, nor the counterclaim, was vulnerable to attack on the ground of want of mutuality.

The order of the superior court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Mr. CHIEF JUSTICE DAILY, specially concurring:

I concur in the result of this decision but not in the theory upon which it is based or in the unnecessary overruling of a long-established principle of law. Since 1904 the courts of this State have consistently held that specific performance of a real-estate contract may be denied where there is lack of vendor-vendee mutuality of remedy. Although the original pronouncement of this doctrine in *Gage* v. *Cummings,* 209 Ill. 120, stated that such mutuality must exist at the time the contract was executed, this rule has since become modified in subsequent decisions so as to require such mutuality, not at the outset of the initial obligation, but only upon commission of subsequent acts. Thus it has been held that specific performance may be demanded where a loan contingency was involved (*Kovacs* v. *Krol,* 385 Ill. 592), where the original contract has been assigned (*Lewis* v. *McCreedy,* 378 Ill. 264), where the vendor's title was originally incomplete (*Kuhn* v. *Eppstein,* 219 Ill. 154), or where the unbound party submits to the jurisdiction of the court so as to create mutuality. *Laegeler* v. *Bartlett,* 10 Ill.2d 478.

In the present case it is quite likely that Manilow, by ordering the execution of the contract and by his repeated adoption and ratification thereof, was bound by the agreement prior to the commencement of the present action, and even if he were not, by filing a counterclaim herein he certainly became subject thereto in accordance with the *Laegeler* decision. Therefore, for this reason the lower court erred in dismissing count 2 of the complaint and the

counterclaim, and no cause whatsoever exists for the complete re-examination of the mutuality doctrine.

It is charged that the term "mutuality" is a loaded word designed only to hamstring justice with a "nonexistent lawsuit." Nothing could be further from the truth. The mutuality doctrine extends back for some 100 years and asserts an equitable principle of fair play by requiring that a litigant must have done equity by subjecting himself to the obligations of an agreement before demanding that his adversary do likewise. Such a doctrine, having been considered in scores of cases and by many learned judges of this court, should be discarded only when the case at hand demands it and then only upon the strongest evidence of its inadequacy. The present opinion stems from neither circumstance and, furthermore, disregards the factual situations which led to the decisions in the *Gage* and *Wloczewski* cases.

We must at all times remember that not only are we deciding a case for the parties of today but we are also setting a guide for the attorneys and courts of tomorrow. To obliterate the long-standing doctrine of mutuality of remedy and to say, in its stead, that specific performance will be granted if "injustice and oppression" do not result, is to furnish an extremely vague and pliable guide in what was once a settled field of the law. It is true that legal doctrines should be re-examined and modified to meet changing conditions and circumstances, but it is likewise true in our system of jurisprudence that the doctrine of *stare decisis* requires our courts to adhere to precedents and not to needlessly unsettle things which are established. I am not prepared to say that the instant case presents either an impelling reason for rejecting the defense of lack of mutuality of remedy, or any basis for overruling the *Gage* and *Wloczewski* decisions.